359 S.E.2d 626

John Anthony BURR and Ohio Farmers Insurance Company, Etc.

v.

NATIONWIDE MUTUAL INSURANCE CO., etc., Robert Lee Piercy, etc., Dwain D. McMullen, et al.

No. 17533.

Supreme Court of Appeals of West Virginia.

July 23, 1987.

Robert M. Steptoe, Jr., C. David Morrison, Steptoe & Johnson, Clarksburg, for appellants.

Joseph A. Wallace, Wallace, Ross & Gibson, Elkins, for appellees.

James C. West, Jr., Jones, Williams, West & Jones, Clarksburg, for D. McMullen.

MILLER, Justice:

This case presents the question whether a "garage operations" insurance policy provides coverage to a person, other than an employee or customer, who uses an insured motor vehicle for a nonbusiness purpose. We also consider to what extent such coverage may be limited by restrictive endorsement to the policy under our omnibus clause statute, W.Va.Code, 33–6–31(a).

I.

Robert Lee Piercy is the owner and operator of Piercy Auto Sales, a motor vehicle dealership in Weston, West Virginia. In March, 1979, Mr. Piercy purchased a garage operations insurance policy [1] from the

---

1. A "garage operations" or "garage liability" policy provides coverage for multiple hazards associated with the business operations of garages and dealerships, including general liability and

defendant, Nationwide Mutual Insurance Company, which was renewed for successive one-year periods.

On September 16, 1980, the plaintiff, John Anthony Burr, was driving a pickup truck which was owned by Mr. Piercy and insured under the Nationwide policy. Mr. Burr, a personal acquaintance of Mr. Piercy, had borrowed the truck for the purpose of towing his boat. It is undisputed that his use of the truck on the day of the accident was unrelated to the business of the dealership. While traveling in a westerly direction on U.S. Route 33 near Buckhannon, West Virginia, Mr. Burr struck an approaching vehicle driven by Dwain D. McMullen. Mr. McMullen, his wife, and two children were injured in the collision. Mr. Burr was insured under a general automobile liability policy issued by Ohio Farmers Insurance Company.

The McMullens brought two suits against Mr. Burr and Mr. Piercy for their personal injuries.[2] Subsequently, Ohio Farmers and its insured, Mr. Burr, brought suit in the Circuit Court of Lewis County against Nationwide, pursuant to the Uniform Declaratory Judgments Act, W.Va. Code, 55–13–1, *et seq.*[3] They sought a declaration (1) that the Nationwide policy provided coverage to Mr. Burr as an insured for any damages he was obligated to pay to the McMullens, and (2) that Nationwide was required to provide Mr. Burr with a defense in the McMullens' personal injury suits against him. In addition, they prayed

for reimbursement of all costs and expenses incurred in defending the personal injury suits and in bringing the declaratory judgment suit.[4] Nationwide promptly moved to dismiss.

When the personal injury suit proceeded to trial, the district court directed a verdict in favor of Mr. Piercy and held that Mr. Burr was acting "solely for his own business and pleasure and was not the agent, servant, or employee" of Mr. Piercy at the time of the accident. A verdict was subsequently rendered in favor of the McMullens in an amount which exceeded Mr. Burr's liability limits under the Ohio Farmers policy.

On September 25, 1986, the Circuit Court of Lewis County granted Nationwide's motion to dismiss the suit for declaratory judgment on several grounds. First, the court held that the directed verdict in favor of Mr. Piercy in the district court trial operated to absolve his insurer of liability as well. Second, it was held that the controversy was not justiciable under the Uniform Declaratory Judgments Act. Third, the court determined that coverage was not afforded under the Nationwide policy where the use of an insured vehicle was for an avowedly nonbusiness purpose. It is only the third ground which is chiefly argued by the parties on appeal, and to which we turn our attention for purposes of review.[5]

---

motor vehicle liability coverages. *See, e.g.,* 12 G. Couch, *Couch on Insurance* 2d § 45:108 (1981).

**2.** Suits were brought in the Circuit Court of Upshur County and in the United States District Court for the Northern District of West Virginia.

**3.** Also named as defendants in the declaratory judgment suit were Mr. Piercy and the McMullens.

**4.** Ohio Farmers and Mr. Burr also sought a declaration that Nationwide had acted in bad faith in its settlement negotiations with the McMullens.

**5.** The other grounds relied upon by the circuit court may be briefly addressed. It concluded that since the federal district court determined that Mr. Burr was not acting as an agent for Mr. Piercy, then Nationwide was not liable under its

policy for Mr. Burr's negligent acts. To the extent that the theory advanced at trial was one of *respondeat superior,* this conclusion is correct. The further question, which the circuit court did not address, was whether Nationwide was liable for Mr. Burr's acts because Mr. Burr *was also an insured* under the policy. It is clear that insurance coverage is not confined to a *respondeat superior* situation. Typically, policies are issued covering persons using the insured's automobile with his permission even though the operator is not proceeding in furtherance of the owner's business. *See State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.,* 154 W.Va. 448, 175 S.E.2d 478 (1970); *State Farm Mut. Auto. Ins. Co. v. American Casualty Co.,* 150 W.Va. 435, 146 S.E.2d 842 (1966). As we discuss *infra,* Mr. Burr was an additional insured under Nationwide's policy.

We also believe the court was in error in holding that the declaratory judgment suit was

## II.

■ We begin our analysis by referring to the provisions of the policy. The subject, nature, and extent of the insurance are to be ascertained from the words of the contract. *Davis v. Combined Ins. Co.*, 137 W.Va. 196, 70 S.E.2d 814 (1952). Our threshold inquiry is whether the policy issued by Nationwide provides coverage for accidents which do not relate to garage operations, but rather involve the nonbusiness or pleasure use of a motor vehicle.

There appears to be no dispute that Mr. Burr, having obtained the vehicle with Mr. Piercy's permission, came within the definition of an insured under Part IV(D)(2) of the policy.[6] The critical issue is the effect of the language of Part IV(A)(1), which conditions liability on the following sentence: "We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies caused by an accident and *resulting from garage operations*." (Emphasis added). Under Part I(F) of the Nationwide policy, the phrase "garage operations" is defined to mean:

"[T]he ownership, maintenance or use of the locations stated in the declarations and that portion of the roads or other accesses that adjoin these locations for garage business. Garage operations includes the ownership, maintenance or use of the autos indicated in Part II as covered autos. Garage operations also includes all operations necessary and incidental to a garage business."

It seems clear that the definition of the term "garage operations" includes three components of coverage. First, there is coverage for liability arising from "the ownership, maintenance or use of the locations" utilized as the garage business.[7] Second, there is coverage for the "ownership, maintenance or use of the autos" specified in the policy as covered vehicles. Third, coverage is available for "all operations necessary or incidental to a garage business."

Nationwide appears to argue that the first coverage, involving the garage loca-

---

not a justiciable controversy. We have held that a justiciable controversy exists, for purposes of obtaining declaratory relief, when a legal right is claimed by one party and denied by another. *West Virginia Utility Contr. Ass'n v. Laidley Field Athletic & Recreational Center*, 164 W.Va. 127, 260 S.E.2d 847 (1979); *Trail v. Hawley*, 163 W.Va. 626, 259 S.E.2d 423 (1979). Here, the right of Mr. Burr to policy coverage was plainly disputed by Nationwide and provided a sufficient predicate for relief under the declaratory judgments act.

6. Part IV(D) of the policy (as amended by endorsement) provides:

"D. WHO IS INSURED

1. You are an insured for any covered auto.

2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow except:

a. Someone using a covered auto you hire or borrow from one of your employees or a member of his or her household.

b. Someone using a covered auto while he or she is working in a business of selling, servicing, repairing or parking autos.

c. Anyone other than your employees, a lessee or borrower or any of their employees, while moving property to or from a covered auto.

3. Anyone is an insured for his or her liability because of acts or omissions of an

insured described above. However, the owner of or anyone else from whom you hirer [sic] or borrow a covered auto is an insured only if that auto is a trailer connected to a covered auto you own."

For the sake of clarity, we emphasize that Nationwide does not argue that Mr. Burr exceeded the scope of his permission to use the garage's pick-up truck. Rather, it is argued that any permission given to him was for a nonbusiness use, i.e., nongarage use, thereby falling outside of policy coverage.

7. This first component of coverage would appear to be a premises liability type coverage, that is, coverage for liability occurring on the garage location premises. Courts have found garage policy liability coverage where invitees are injured on the garage premises. *E.g., Griffin v. Hardware Mut. Ins. Co.*, 93 Ga.App. 801, 92 S.E.2d 871 (1956) (customer injured when helping mechanic remove fan belt on car); *Great American Ins. Co. v. Triplett*, 243 Miss. 815, 139 So.2d 357 (1962) (customer injured in gasoline can explosion); *T.R. Service Station, Inc. v. Maryland Casualty Co.*, 42 Misc.2d 536, 248 N.Y.S.2d 458 (Sup.Ct.), *rev'd on other grounds*, 22 A.D.2d 817, 254 N.Y.S.2d 883 (1964) (watchdog bit passerby); *Sadikoff v. American Indemnity Co.*, 35 Tenn.App. 1, 242 S.W.2d 316 (1950) (invitee fell into unlighted grease pit on premises); *see generally* 2 R. Long, *The Law of Liability Insurance* § 7.06 (1986).

tion, must also be deemed to form a limitation on the second coverage dealing with automobiles. It contends that to be covered the operation, maintenance, and use of an insured vehicle must be around the garage premises, or at least closely interwoven with some activity arising from the garage operation. However, it seems clear to us that the second coverage deals generally with the ownership, maintenance, and use of the covered vehicles and is not narrowly confined to garage business uses.[8]

Other jurisdictions have held, in a variety of contexts, that a garage operations policy extends coverage to nonbusiness uses of insured vehicles. For example, it has been held that coverage is afforded to persons using a "demonstrator" vehicle, regardless of whether its use at the time of the accident was related to the business of the garage. *E.g., United States Fidelity & Guaranty Co. v. Drinkard*, 258 F.Supp. 380 (W.D.Va.1966); *Kidwell v. Chuck Olson Oldsmobile, Inc.*, 4 Wash.App. 471, 481 P.2d 908 (1971). Coverage is also afforded where a prospective buyer drives a garage vehicle with the permission of a salesperson. *E.g., Murray v. Bankers Fire & Marine Ins. Co.*, 198 So.2d 532 (La.App.1967); *Morton v. American Employers Ins. Co.*, 104 So.2d 189 (La.App.1958); *Hartford Ins. Group v. Rubinshteyn*, 66 N.Y.2d 732, 497 N.Y.S.2d 352, 488 N.E.2d 98 (1985); *Safeco Ins. Co. of America v. Pacific Indemnity Co.*, 66 Wash.2d 38, 401 P.2d 205 (1965); *Maryland Casualty Co. v. Heald*, 125 Vt. 116, 211 A.2d 177 (1965).

Similarly, where one operates a vehicle which has been loaned or leased to him by a garage, he is covered by the garage's policy even though he uses it for his own purposes. *E.g., Wells v. Allstate Ins. Co.*, 327 F.Supp. 622 (D.S.C.1971); *Harrison v. Densmore*, 279 Ala. 190, 183 So.2d 787 (1966); *Home Ins. Co. v. Lomax*, 17 Ariz.

App. 520, 498 P.2d 594 (1972); *Pacific Indemnity Co. v. Universal Underwriters Ins. Co.*, 43 Cal.Rptr. 26, 232 Cal.App.2d 541 (1965); *Western States Mut. Ins. Co. v. Continental Casualty Co.*, 133 Ill.App.2d 294, 272 N.E.2d 439 (1971); *Greer v. Zurich Ins. Co.*, 441 S.W.2d 15 (Mo.1969); *Gore v. South Carolina Ins. Co.*, 21 N.C.App. 730, 205 S.E.2d 579 (1974). It thus appears that the significant criterion for coverage under a garage operations policy is whether the vehicle involved is an insured vehicle under the policy, and not the nature of its use when the accident occurred.

■ It is by now a well settled principle of law that insurance policies are to be strictly construed against the insurer. As we said in Syllabus Point 4 of *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987): "It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." *See also Huggins v. Tri-County Bonding Co.*, 175 W.Va. 643, 337 S.E.2d 12 (1985); *West Virginia Public Employees Ins. Bd. v. Blue Cross Hospital Serv., Inc.*, 174 W.Va. 605, 328 S.E.2d 356 (1985); *Hensley v. Erie Ins. Co.*, 168 W.Va. 172, 283 S.E.2d 227 (1981).

We are also obliged to give to an insurance contract that construction which comports with the reasonable expectations of the insured. *National Mut. Ins. Co. v. McMahon & Sons, Inc., supra; Soliva v. Shand, Morahan & Co.*, 176 W.Va. 430, 345 S.E.2d 33 (1986). Guided by these principles, we conclude that where garage liability coverage is provided for the ownership, maintenance, or use of automobiles, and the insured authorizes a third person to operate a covered vehicle and the policy specifically states that such permissive operation makes the operator an additional

---

**8.** Many garage operations policies include a standard clause which limits the motor vehicle coverage to the "ownership, maintenance or use of any automobile in connection with [garage] operations." 2 R. Long, *The Law of Liability Insurance* § 7.06 (1986). The absence of such limiting language in the Nationwide policy serves to reinforce our conclusion that it provides coverage for nonbusiness uses as well.

insured, then there is coverage for an automobile accident even though it occurs when the automobile is being driven on personal business of the operator. Thus, Mr. Burr, as a permittee, was afforded coverage under the policy.

## III.

■ Nationwide argues in the alternative that if coverage for nonbusiness uses of vehicles is provided under the policy, either the "dealer plates" endorsement exclusion or the bailee for hire exclusion operates to prevent coverage for Mr. Burr. We must determine whether an endorsement which limits the scope of omnibus coverage is permissible under W.Va.Code, 33–6–31(a), the statutory omnibus clause.

W.Va.Code, 33–6–31(a), provides, in part:

"No policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle, shall be issued or delivered in this State to the owner of such vehicle, or shall be issued or delivered by any insurer licensed in this State upon any motor vehicle for which a certificate of title has been issued by the department of motor vehicles of this State, unless it shall contain a provision insuring the named insured and any other person, *except a bailee for hire and any persons specifically excluded by any restrictive endorsement attached to the policy*, responsible for the use of or using the motor vehicle with the consent, expressed or implied, of the named insured or his spouse against liability for death or bodily injury sustained, or loss or damage occasioned within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle by the named insured or by such person...." (Emphasis added).

Under W.Va.Code, 33–6–31(a), the inclusion of an omnibus clause in a policy of motor vehicle insurance is mandatory. We held in *Bell v. State Farm Mut. Auto. Ins. Co.*, 157 W.Va. 623, 207 S.E.2d 147 (1974), which dealt with the uninsured motorist coverage in subsection (b) of this same statute, that any provision in an insurance policy which attempted to contravene the statute was of no effect. Nationwide does not quarrel with this rule which would validate Mr. Burr's coverage as an additional insured. Rather, it argues that its endorsement excluded coverage as permitted by W.Va.Code, 33–6–31(a), because it had (1) a bailee for hire exclusion and (2) its "dealer plates" exclusion should be equated with the statutory language that enables an exclusion for "any person specifically excluded by any restrictive endorsement." [9]

### A.

Nationwide does not make any substantial argument with regard to the bailee for hire policy exclusion which is compatible with the exclusion in W.Va.Code, 33–6–31(a), for "bailee for hire" situations. This is so because there is no evidence that Mr. Burr had paid any money for the use of the vehicle and, thus, factually there is no predicate for the bailee for hire exclusion.

### B.

■ A more substantial question is presented, however, in determining whether the "dealer plates" endorsement falls under the second statutory omnibus exclusion, which applies to "persons specifically excluded" by restrictive endorsement. Nationwide contends that Mr. Burr was a member of a class of "persons" who were excluded by the endorsement, namely, those operating insured vehicles equipped with dealer plates. Mr. Burr attacks Na-

---

**9.** This endorsement stated:
    "Any auto you own while used with plates described in this endorsement [dealer plates] is a covered automobile for LIABILITY and AUTO MEDICAL PAYMENTS INSURANCE, but only while the auto is: (A) Used in your garage business, or (B) Rented to a customer whose auto is left with you for service or repair."

tionwide's interpretation of the exclusion as overbroad, and argues that a policy endorsement must specifically designate an excluded driver by name.

It has been recognized by our cases that the primary purpose of the omnibus clause in a policy is to maximize the availability of insurance proceeds; that the principal beneficiary of the clause is the general public; and that the clause is remedial in nature and must be construed liberally so as to provide insurance coverage where possible. We summarized these various principles in Syllabus Point 1 of *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 154 W.Va. 448, 175 S.E.2d 478 (1970):

> "The purpose of an omnibus clause in an automobile liability insurance policy being to extend coverage, in proper circumstances, to any person using the insured vehicle, and to afford greater protection to the public generally, such clause should be given a liberal construction so as to afford coverage thereunder."

*See also State Farm Mut. Auto. Ins. Co. v. American Casualty Co.*, 150 W.Va. 435, 146 S.E.2d 842 (1966). These salutary principles apply with even greater vigor to the mandatory omnibus requirements imposed by W.Va.Code, 33–6–31(a), as the legislature has demonstrated a clear intent to afford coverage to anyone using a vehicle with the owner's permission as a means of giving greater protection to those who are involved in automobile accidents. The statute should be liberally construed to effect coverage.

■ We cannot accept Nationwide's interpretation of the exclusion for two reasons. First, it is at odds with the policy of liberalizing coverage which underlies the mandatory omnibus clause. Second, we believe Nationwide's suggestion that the statutory phrase "persons specifically excluded" should be interpreted to include a category which refers to no specified persons, but is contained in their endorsement as "dealer plates," is contrary to the plain meaning of the statute. We must, in construing a statute, ascribe to words their usual and ordinary meaning. *E.g., Brewer v. Brewer*, 175 W.Va. 750, 338 S.E.2d 229 (1985); *Thomas v. Firestone Tire & Rubber Co.*, 164 W.Va. 763, 266 S.E.2d 905 (1980). As commonly used and understood, the word "person" refers to a given human being or individual. Webster's New Collegiate Dictionary 848 (1979). To "specifically exclude" a person, it follows that it must be done with particularity. If the legislature had intended to allow insurers to artifically define groups or classes of persons for purposes of exclusion, it could have done so expressly. Absent evidence of such an intention, we must supply an interpretation consistent with the words used.

We are aided in our conclusion by a review of statutory omnibus clauses of other jurisdictions. Many states provide no statutory exceptions to mandatory omnibus coverage. For example, our sister state of Virginia, which has an omnibus statute quite similar to our own, does not permit any exclusions to omnibus coverage. Va. Code § 38.2–2204(D). Those few states which do recognize exclusions limit such exclusions to individuals designated by name in the policy and do not permit insurers to define "classes" of excluded persons. *E.g.*, Ariz.Rev.Stat.Ann. § 28–1170(B)(3) ("person or persons designated by name"); Idaho Code § 41–2510 ("designated individuals"); Mich.Stat.Ann. § 500.3009 ("named person"); N.M.Stat.Ann. § 66–5–221(K) ("named driver"); Okla.Stat. tit. 47, ¶ 7–324(C) ("person or persons designated by name"); S.D. Codified Laws Ann. § 58–11–9.3 ("named individual").

We conclude that to be effective under W.Va.Code, 33–6–31(a), an exclusion must specifically designate by name the individu-

al or individuals to be excluded. Since the "dealer plates" endorsement in Nationwide's policy did not so designate Mr. Burr, it was null and void as to him.[10] The circuit court's holding to the contrary was erroneous.

## IV.

For the reasons discussed above, the judgment of the Circuit Court of Lewis County is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and Remanded.

---

[10]. Since we have determined that the "dealer plates" endorsement is invalid under W.Va.Code, 33–6–31(a), we do not address the further question whether it is invalid under W.Va.Code, 17D–4–1, *et seq.*, the West Virginia Safety Responsibility Act. This issue was discussed in *Jones v. Motorists Mut. Ins. Co.*, 177 W.Va. 763, 356 S.E.2d 634 (1987). We held in *Jones* that a driver exclusion in an automobile policy is inoperative up to the limits of liability insurance required under W.Va.Code, 17D–4–12. The endorsement would, we believe, also be invalid under the analysis used in *Jones*.