383 S.E.2d 791

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Corporation**

v.

**UNIVERSAL UNDERWRITERS INSURANCE COMPANY, a Corporation.**

**No. CC990.**

Supreme Court of Appeals of West Virginia.

July 12, 1989.

**610**

Robert J. Louderback, Louderback & Louderback, Charleston, for State Farm.

Arden J. Curry, II, Pauley, Curry, Sturgeon & Vanderford, Charleston, for Universal Underwriters Ins.

MILLER, Justice:

In this case, we are asked whether an automobile dealer's liability policy has primary coverage for an accident involving a car loaned by the dealer to a customer in the regular course of business.

**I.**

Honeycutt Pontiac–Buick–GMC is a motor vehicle dealership located in Logan, West Virginia. On December 6, 1986, Alex P. Bucci drove his 1985 Pontiac automobile to the dealership for repairs. The dealership provided Bucci with a temporary substitute vehicle for his use while the repairs were made. In his use of the substitute, Bucci negligently pulled from a parking lot and struck another vehicle driven by Zella Pigman.

The dealership was an insured under a garage liability policy issued by the defendant, Universal Underwriters Insurance Company. This policy provided coverage for "AUTO HAZARD,"[1] which was defined to include "the ownership, maintenance, or use of any AUTO YOU own ... [that is] furnished for the use of any person or organization." An omnibus clause extended coverage to anyone "required by law to be an INSURED while using an AUTO covered by this [policy] within the scope of YOUR permission." Omnibus coverage provided by the policy was said to be excess over other collectible insurance.

Bucci was an insured under a motor vehicle liability policy issued by the plaintiff, State Farm Mutual Insurance Company. The State Farm policy contained a drive-other-cars clause which read, in part: "[L]iability coverage [hereunder] extends to the use, by an insured, of a ... temporary substitute car...." This coverage in the State Farm policy was also deemed to be excess.

Universal refused to pay a liability claim submitted by Ms. Pigman. Its refusal was founded on the view that its policy did not provide omnibus coverage to Bucci or, in the alternative, that such coverage was ex-

---

1. We preserve the capitalization used in the Universal policy. Words that appear entirely in capital letters are defined elsewhere in the policy.

cess and that of State Farm was primary. State Farm paid the sum of $853.47 in settlement of Ms. Pigman's claim and, on February 23, 1988, filed this suit in Kanawha County Circuit Court. In its complaint, State Farm requested a declaration of the coverages provided by the State Farm and Universal policies and damages against Universal in the sum of $853.47, plus interest and costs.

Universal moved for summary judgment, but its motion was denied. On joint motion of the parties, two questions have been certified to us. We may summarize these questions as follows: first, does the Universal policy provide coverage to Bucci by virtue of its omnibus clause; and second, if Bucci is an omnibus insured, which of the two liability policies is primary? We consider these questions in sequence.

## II.

Universal first contends that Bucci was not within the scope of its omnibus clause. Under its policy, coverage was provided to all persons "required by law to be an INSURED" while a permissive user of the dealership's vehicles. Universal concedes that Bucci used the substitute vehicle with the dealership's permission.[2] What forms the substance of its dispute is whether West Virginia law requires Bucci to be an omnibus insured.

■ State Farm maintains that under our Motor Vehicle Safety Responsibility Law, W.Va.Code, 17D–4–12(b)(2), a motor vehicle liability policy must include as an insured "any other person ... using any [covered] vehicle or vehicles with the express or implied permission of [the] named insured."[3] This omnibus requirement, like the more general one contained in W.Va. Code, 33–6–31(a), is automatically engrafted onto all policies issued in this State. It is for this reason that Bucci becomes an additional insured under Universal's policy because, in the terminology of the policy, he is "required by law to be an INSURED."

■ We have traditionally held that the statutory omnibus clause requirements contained in W.Va.Code, 33–6–31(a), are by operation of law made a part of every automobile liability policy issued in this State. In *Burr v. Nationwide Mut. Ins. Co.*, 178 W.Va. 398, 359 S.E.2d 626 (1987), we stated this principle in Syllabus Points 2 and 3 as follows:

"2. Any provision in an insurance policy which attempts to contravene W.Va. Code, 33–6–31(a), is of no effect.

"3. The mandatory omnibus requirements imposed by W.Va.Code, 33–6–31(a), indicate that the legislature has demonstrated a clear intent to afford coverage to anyone using a vehicle with the owner's permission as a means of giving greater protection to those who are involved in automobile accidents. The statute should be liberally construed to effect coverage."

*See also Bell v. State Farm Mut. Auto. Ins. Co.*, 157 W.Va. 623, 207 S.E.2d 147 (1974).

This same law requires the conclusion that the omnibus clause requirements in W.Va.Code, 17D–4–12(b)(2), are by operation of law made a part of an automobile

---

**2.** We held in *Burr v. Nationwide Mut. Ins. Co.*, 178 W.Va. 398, 402, 359 S.E.2d 626, 630 (1987), that one is a permissive user if he "operates a vehicle which has been loaned or leased to him by a garage, ... even though he uses it for his own purposes." (Citations omitted).

**3.** W.Va.Code, 17D–4–12(b)(2), provides:

"Such owner's policy of liability insurance:

\* \* \* \* \* \*

"(2) Shall insure the person named therein and any other person, as insured, using any such vehicle or vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, operation, maintenance or use of such vehicle or vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such vehicle, as follows: Twenty thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, forty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident."

liability policy.[4] Thus, under this section, Bucci is an insured of Universal as he was using the dealership's vehicle with its permission.

We are referred by Universal to cases that discuss the omnibus clause requirements contained in the financial responsibility statutes of other jurisdictions. These cases state the principle that if a motor vehicle policy is not certified as proof of financial responsibility, the omnibus clause requirements do not apply. *Universal Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 166 Mont. 128, 531 P.2d 668 (1975); *Bob–Boyd Lincoln Mercury v. Hyatt*, 32 Ohio St. 3d 300, 513 N.E.2d 331 (1987); *Stout v. Universal Underwriters Ins. Co.*, 320 Pa.Super. 240, 467 A.2d 18 (1983). These cases were decided under statutes that did not provide for compulsory automobile insurance.[5]

It is clear that our safety responsibility statute, W.Va.Code, 17D–1–1, *et seq.*, requires the "owner or registrant of a motor vehicle licensed in this state to maintain certain security during the registration period for such vehicle." W.Va.Code, 17D–2A–1.[6] The types of security that will satisfy this requirement are set out in W.Va. Code, 17D–2A–3(a), one of which is

"an insurance policy delivered or issued for the delivery in this state by an insurance company authorized to issue vehicle liability and property insurance policies in this state within limits which shall be no less than the requirements of section two [§ 17D–4–2], article four, chapter seventeen-d of this code[.]"

In order to secure registration for license plates to a motor vehicle, it is necessary under W.Va.Code, 17A–3–3(a)(5), to supply proof of insurance or other acceptable security.[7] Moreover, under W.Va.Code, 17A–

4. Although not an issue here, the interplay between the omnibus clause requirements in W.Va.Code, 17D–4–12(a), the safety responsibility statute, and in W.Va.Code, 33–6–31, the general omnibus statute, is aptly illustrated by *Jones v. Motorist Mut. Ins. Co.*, 177 W.Va. 763, 356 S.E.2d 634 (1987). There, the insurance company issued a policy to Mrs. Jones that excluded coverage for her teenage son. Her son, while operating the car with her permission, had an accident causing property damage to third parties. The company claimed that under the general omnibus statute, it could specifically exclude persons from the policy by a restrictive endorsement. We agreed that this language was in the general omnibus statute, but held that it could not supersede the more limited language contained in our safety responsibility statute up to the liability limits required in that statute. We concluded in the single Syllabus:

"A 'named driver exclusion' endorsement in a motor vehicle liability insurance policy in this State is of no force or effect up to the limits of financial responsibility required by *W.Va.Code*, 17D–4–2 [1979]; however, above those mandatory limits, or with regard to the property of the named insured himself, a 'named driver exclusion' endorsement is valid under *W.Va.Code*, 33–6–31(a) [1982]."

5. The *Bob–Boyd* case is representative. In that case, a garage liability insurer denied coverage to a prospective customer who test-drove a vehicle. Like the case at hand, the policy contained an omnibus clause that extended coverage to any permissive user who was "required by law to be an INSURED." The Supreme Court of Ohio focused attention on its financial

responsibility statute, Ohio Rev.Code Ann. § 4509.01 et seq. The omnibus clause requirements of that statute were made expressly applicable only to "motor vehicle liability polic[ies]." Ohio Rev.Code Ann. § 4509.51. This phrase was defined elsewhere in the statute as an "'owner's policy' or an 'operator's policy' of liability insurance *certified ... as proof of financial responsibility*, ... to or for the benefit of the person named therein as insured." Ohio Rev. Code Ann. § 4509.01(L). (Emphasis added). Since *Bob–Boyd*'s policy was not certified as proof of financial responsibility, the omnibus clause requirements of the statute were inapplicable. We note that Ohio does not have a compulsory insurance statute like that in West Virginia.

6. W.Va.Code, 17D–2A–2, provides:

"This article applies to the operation of all motor vehicles required to be registered to have proof of security pursuant to article three [§ 17A–3–1 et seq.], chapter seventeen-A of this Code, with the exception of motor vehicles owned by the State, any of its political subdivisions or by the federal government."

7. W.Va.Code, 17A–3–3(a)(5), as applicable to insurance coverage, is as follows:

"A statement under penalty of false swearing that liability insurance is in effect within limits which shall be no less than the requirement of section two [§ 17D–4–2], article four, chapter seventeen-D of this Code, which statement shall contain the name of the applicant's insurer, the name of the agent or agency which issued the policy and the effective date

3–7(2), one of the grounds for which the Department of Motor Vehicles may refuse to issue a title or to transfer registration of a vehicle is "[t]hat the applicant fails to present a statement of insurance or proof of other security as required pursuant to the provisions of section three [§ 17A–3–3] of this article[.]"

There are also provisions in W.Va.Code, 17D–2A–4 and 17D–2A–5, requiring insurance companies to issue a certificate of insurance and to notify the Department of Motor Vehicles if the insurance is cancelled. If notice of cancellation is received, the Department is authorized to "suspend the operator's ... license of the owner of such vehicle ... and shall suspend the motor vehicle registration until proof of insurance is presented to the department." W.Va.Code, 17D–2A–5(a).

■ It is clear from the foregoing statutes, and particularly since the enactment of W.Va.Code, 17D–2A–1, *et seq.* (1981),[8] that our Motor Vehicle Safety Responsibility Law is designed to require mandatory insurance coverage for motor vehicles owned in this State. *See VanMeter v. West Virginia Dep't of Motor Vehicles,* 173 W.Va. 129, 313 S.E.2d 405 (1984).

There is a distinction made between financial responsibility statutes, which require that the driver have or post security after an accident occurs, and compulsory insurance statutes, which require a minimum amount of liability insurance in order to obtain a license plate or title to a vehicle. This difference is set out in 6B J. Appleman, *Insurance Law & Practice* § 4299 at 301–02 (1979):

> of the policy, and such other information as may be required by the commissioner of motor vehicles[.]"

**8.** *See* 1981 W.Va. Acts ch. 157.

**9.** This also appears to be the rationale of the other cases relied on by Universal, but they do not involve compulsory insurance statutes. *E.g., Universal Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co., supra; Stout v. Universal Underwriters Ins. Co., supra.*

**10.** Universal does not argue that it is exempt from the safety responsibility act under W.Va.

"These [compulsory insurance] statutes ... make it unlawful to register or operate an automobile without insurance or some other indicia of financial responsibility. This is distinguished from the standard Financial Responsibility Act which requires security only after an accident has occurred, or the operator is classified as an habitual offender....

"The typical compulsory liability statute requires that security, usually a standard liability policy, be posted with the appropriate official in the Bureau of Motor Vehicles as a condition precedent to the issuance of valid vehicle license plates. The validity of such a condition has been upheld as a valid exercise of a state's police power." (Footnotes omitted).

Thus, the coverage provided for in our safety responsibility statute is compulsory and broadly based, and is not limited by any "certification" concept such as appears to underlie the decision in *Bob–Boyd.*[9] Our statute is designed to set a minimum coverage to which all insurance policies issued on motor vehicles are subject.[10] Universal's argument that its policy was not issued under the safety responsibility statute is simply not correct. Its policy must meet the minimum requirements of that statute, which include the mandatory omnibus clause.

The trial court answered the first certified question correctly by finding that the dealership's garage owner's policy, which defines an additional insured as any other person "required by law to be an INSURED while using an AUTO ... within the scope of YOUR permission," covers a

Code, 17A–3–2(1). This section exempts from the "registration and certificate of title provisions of this chapter ... [a]ny such vehicle driven or moved upon a highway in conformance with the provisions of this chapter relating to. manufacturers, transporters, [and] dealers...." This may be because under W.Va. Code, 17A–6–4, a dealer must, in order to get a license to operate the business, supply an insurance policy "insuring the applicant and any other person, as insured, using any vehicle or vehicles owned by the applicant with the express or implied permission of such named insured[.]" This omnibus provision would provide coverage to the driver Bucci in this case.

driver who has been permitted to use an automobile owned by the dealership. This is by virtue of the mandatory omnibus clause requirements of W.Va.Code, 17D-4-12(a), and W.Va.Code, 33-6-31(a).

## III.

■ In the alternative, Universal argues that any coverage it provided to Bucci is excess over that provided by State Farm or should be prorated with the State Farm coverage. We note, in this respect, that each of the two policies contained a pro-rata clause and an excess clause providing that coverage thereunder is excess over any other valid and collectible insurance.

We recently spoke to these same issues in *Allstate Ins. Co. v. State Auto. Mut. Ins. Co.*, 178 W.Va. 704, 364 S.E.2d 30 (1987). In *Allstate*, the owner of a motor vehicle permitted a third party, Charles Douglas Minor, to borrow his vehicle to load building materials. When Minor turned the ignition key, the vehicle lurched backward and struck a passerby. Liability policies held by the owner and Minor contained traditional pro-rata and excess clauses. We concluded that the policy of the owner was primary and stated the applicable rule in Syllabus Point 1:

> "We adopt the rule that when a pro-rata clause and an excess clause appear in the automobile liability policies of both the driver and the owner of an automobile, the insurer of the owner is primarily liable and must bear the whole loss, within the limits of the policy."

■ Universal acknowledges that our decision in *Allstate* is contrary to its position, but questions the soundness of that decision. We find the decision in *Allstate* to be

eminently sound.[11] The result reached in that case is in accord with the majority of jurisdictions, as summarized by Professor Appleman: "[W]here the owner of an automobile or truck has a policy with an omnibus clause, and the additional insured also has a non-ownership policy which provides that it shall only constitute excess coverage over and above any other valid, collectible insurance, the owner's insurer has the primary liability." 8A J. Appleman, *Insurance Law & Practice* § 4909.45 at 418 (1981). We reaffirm the vitality of *Allstate* and hold, on authority of that case, that Universal's garage policy is primary.

The questions certified to us by the Kanawha County Circuit Court are, therefore, answered and dismissed from the docket.

Certified Questions Answered and Dismissed.

---

11. In *Allstate,* 178 W.Va. at 706, 364 S.E.2d at 32, we cited *American Surety Co. v. Canal Ins. Co.,* 258 F.2d 934 (4th Cir.1958), and the following cases in note 5, 178 W.Va. at 706, 364 S.E.2d at 32:

> "See also, Allstate Insurance Company v. Atlantic National Ins. Co., 202 F.Supp. 85 (S.D.W.Va.1962); Henderson v. Selective Insurance Co., 369 F.2d 143 (6th Cir.1966); Dairyland Mut. Ins. Co. v. Andersen, 102 Ariz. 515, 433 P.2d 963 (1967); Preferred Risk Mut. Ins. Co. v. Commercial Union Ins. Co., 121 Ga.App. 367, 173 S.E.2d 730 (1970); Truck Ins.

> Exchange v. Torres, 193 Cal.App.2d 483, 14 Cal.Rptr. 408 (1961); London and Lancashire Ins. Co. v. Government Employees Ins. Co., 66 N.J.Super. 269, 168 A.2d 855 (1961); Safeco Ins. Co. v. Pacific Indem. Co., 66 Wash.2d 38, 401 P.2d 205 (1965); Thurston Nat. Ins. Co. v. Zurich Ins. Co., 296 F.Supp. 619 (W.D.Okla. 1969); Continental Casualty Co. v. Zurich Ins. Co., 57 Cal.2d 27, 17 Cal.Rptr. 12, 366 P.2d 455 (1961); Wrenn & Outlaw, Inc. v. Employers' Liability Assurance Corp., 246 S.C. 97, 142 S.E.2d 741 (1965); Annotation 76 A.L.R.2d 502-514 (1961)."