943 F.2d 49
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff-Appellee,
v.
The CONTINENTAL INSURANCE COMPANY, McCombs Chevrolet,
Incorporated, a/k/a McCombs Auto Mall, Defendants-Appellants,
and
Willard R. Vaughan, Ronald E. Bonar, Weirton Steel
Corporation, General Motors Corporation, Defendants.
NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff-Appellant,
v.
The CONTINENTAL INSURANCE COMPANY, McCombs Chevrolet,
Incorporated, a/k/a McCombs Auto Mall, Weirton
Steel Corporation, Defendants-Appellees,
and
Willard R. Vaughan, Ronald E. Bonar, General Motors
Corporation, Defendants.
 Nos. 90-1785, 90-1786.
 United States Court of Appeals, Fourth Circuit.
 Argued July 10, 1991.
Decided Sept. 17, 1991.
 
 Appeals from the United States District Court for the Northern District of West Virginia, at Wheeling. Richard L. Williams, District Judge. (CA-88-11-W-K)
 Argued: Jeffrey Alan Holmstrand, Bachmann, Hess, Bachmann & Garden, Wheeling, W.V., for appellants; Robert Gregory McDermott, McDermott, Bonenberger, Stimmel & McDermott, Wheeling, W.V., for appellees.
 On Brief: Lester C. Hess, Jr., Bachmann, Hess, Bachmann & Garden, Wheeling, W.V., for appellants.
 N.D.W.Va.
 REVERSED.
 Before PHILLIPS, MURNAGHAN and SPROUSE, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Ronald E. Bonar, a resident of Ohio, took his 1983 Cavalier into McCombs Chevrolet, Inc., an Ohio automobile dealership, for repairs. He had insurance with Nationwide Mutual Insurance Company. McCombs lent Bonar a 1986 Oldsmobile Firenza. McCombs had insurance with Continental Insurance Company.[1]
 
 
 2
 On April 22, 1986, while driving the Firenza, Bonar had an accident with Willard Vaughn at the premises of Weirton Steel Corporation in West Virginia. Prior to the accident, Bonar had driven the Firenza in West Virginia on a number of occasions. Vaughn secured a judgment against Bonar and Weirton Steel in the amount of $748,470.54, plus post-judgment interest. The present question involves a declaratory judgment action between Nationwide and Continental. The controversy concerns the applicability of the two insurers' policies to the Weirton accident.
 
 
 3
 The Nationwide policy insured Bonar while he drove an unowned vehicle that was temporarily substituting for the owned vehicle if the "insured loss" was "not covered by other insurance." Policy at 6. The Continental policy, in general, insured McCombs for $500,000 in liability coverage. However, the policy did not apply to "customers" unless, in essence, they were uninsured or underinsured with respect to any applicable statutory minimum of coverage. In such a case, Continental covered the customer, "but only up to the compulsory or financial responsibility limits where the covered auto is principally garaged." Policy at IV.D.1.b(3). The Firenza was principally garaged in Ohio where the statutory minimum was $12,500. Continental also agreed to provide the minimum amounts of coverage required by the state where the automobile was being used. At the time of the accident, West Virginia mandated a minimum of $20,000 coverage.
 
 
 4
 The district court judge found that Continental had bound itself to provide the coverage required by West Virginia. Because the car had been operated within West Virginia for at least thirty days of the preceding three hundred sixty-five, he concluded that Continental's attempt to limit its coverage of permissive users, i.e., customers, was invalid. He found the restriction void and thus determined that Continental had to insure Bonar at the $500,000 level. He also found that Nationwide was the primary insurer and provided $20,000 of additional insurance to Bonar.
 
 
 5
 On appeal, Continental contends that its policy provided no coverage to Bonar or, alternatively, that any liability is limited to $20,000, the minimum financial responsibility coverage mandated by West Virginia law. Nationwide disputes the judge's conclusion that it was the primary insurer.
 
 
 6
 Turning first to the Nationwide policy, we find that the Nationwide policy covered Bonar while he was driving the Firenza. The policy stated:
 
 
 7
 Your auto's Property Damage and Bodily Injury Liability insurance also applies to certain other motor vehicles: 1) It applies to a motor vehicle you do not own, while it substitutes temporarily for your auto. Your auto must be out of use because of breakdown, repair, servicing, loss, or destruction.
 
 
 8
 Policy at 5. Because Bonar's car was out of use because of repair, the policy applied. However, with respect to "losses involving the use of other motor vehicles," the policy only paid "the insured loss not covered by other insurance." We therefore must decide whether or not the insured loss was covered by the Continental policy.
 
 
 9
 Under the Continental policy, the Firenza was a "covered auto." When covered autos were "away from the state," Continental agreed to
 
 
 10
 a. Increase this endorsement's liability limits to meet those specified by a compulsory or financial responsibility law in the jurisdiction where the covered auto is being used.
 
 
 11
 b. Provide the minimum amounts and types of other coverages, such as "No-fault", required of out of state vehicles by the jurisdiction where the covered auto is being used. Policy at IV.F.1.[2] Thus, even though the Continental policy might not explicitly provide certain coverage required by another state, the Continental policy stated that it should be read to extend to such coverage. Because the Firenza was driven in West Virginia, "away" from Ohio, Continental had to (a) increase the coverage to the minimum limit of West Virginia law or (b) provide the minimum coverage required by West Virginia of out-of-state vehicles.[3]
 
 
 12
 The minimum limits and coverage required by West Virginia are as follows. The financial responsibility laws in West Virginia set the minimum "proof of ability to respond in damages for liability" at $20,000 for bodily injury to or death of one person in one accident. W.Va.Code § 17D-4-2. In addition, West Virginia required that an omnibus clause exist in all insurance policies issued and delivered in the state. The omnibus clause provided coverage for "the named insured and any other person, except a bailee for hire and any persons specifically excluded by any restrictive endorsement attached to the policy...." W.Va.Code § 33-6-31(a); see Burr v. Nationwide Mut. Ins. Co., --- W.Va. ----, 359 S.E.2d 626, 631 (1987). These requirements apply to some out-of-state owners. A nonresident, who owns a vehicle which is "operated upon any road or highway of this state," and "physically present within this state for more than thirty days during the preceding three hundred sixty-five days," must provide security of financial responsibility. § 17D-2A-3. At the time of the accident, West Virginia permitted a nonresident to give proof of financial responsibility by filing "a written certificate ... of an insurance carrier authorized to do business in the state in which the vehicle ... owned by such nonresident is registered...." § 17D-4-11(1). The insurance carrier had to "agree in writing that such policies shall be deemed to conform with the law of this State relating to the terms of motor vehicle liability policies issued herein." § 17D-4-11(2).[4]
 
 
 13
 The district court found that the Firenza driven by Bonar had been physically present within West Virginia for more than thirty days.[5] According to Bonar's affidavit, the car was operated in West Virginia by Bonar or his wife on March 15-19, 22-24, 27, 31, and April 1-7, 10, 12-16, 19-25. In total this makes exactly thirty days. The accident, however, occurred on April 22, after the car had operated in West Virginia for less than thirty days. Nevertheless, it may be that the statute requires any nonresident who owns a vehicle that was present in the state for any thirty days out of the past three hundred sixty-five to provide security. McCombs is located within twenty miles of the West Virginia border. In this case, if McCombs had previously lent the Firenza to someone else who had driven it in West Virginia, McCombs might be required to provide security under West Virginia law.
 
 
 14
 We cannot conclude that the judge's finding that the Firenza had been present for more than thirty days in the state was clearly erroneous.[6] McCombs, as a nonresident owner, thus had to have an insurance policy that provided at least $20,000 coverage and covered all users except those specifically excluded, at least to the statutory minimum.
 
 
 15
 The Continental policy fails in some respects to meet the West Virginia requirements. The policy attempted to restrict the coverage to certain permissive users. The policy provided that customers using covered autos were insured if the customer (1) had "no other available insurance (whether primary, excess or contingent)" or (2) had "other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered auto is principally garaged." Policy at IV.D.1.b(3). In either case, the Continental policy insured the customer "only up to the compulsory or financial responsibility law limits where the covered auto is principally garaged." Id.
 
 
 16
 West Virginia, however, requires automobile dealerships to insure cars when they are being driven by customers. For example, in State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co., --- W.Va. ----, 383 S.E.2d 791 (1989), the West Virginia Supreme Court held that an in-state dealership must provide coverage for customers of the dealership who use the dealership's cars with its permission. See Burr, 359 S.E.2d at 630 (holding that a dealership could not exclude from coverage a class of permissive users, i.e., those operating vehicles with dealer plates). The Court based its results on West Virginia statutes requiring insurance policies to provide mandatory minimum coverage and to include an omnibus clause. Moreover, in West Virginia, a dealership must provide minimum coverage for its customers without regard to the customer's own coverage. For example, in State Farm, the court found that the dealership's policy had to extend to permissive users despite the fact that the user had a policy extending liability coverage to use of temporary vehicles. 383 S.E.2d at 792, 796. If McCombs had been in West Virginia, it could not have restricted coverage to customers who had sufficient minimum other insurance. Therefore, after the car had been present for over thirty days in the state, McCombs had to provide minimum coverage of its customers without regard to the potential for coverage under the customer's policy.
 
 
 17
 However, above the minimum limit for mandatory insurance coverage, at least in this circumstance, Continental policy's restriction of coverage for customers was valid. When West Virginia has found that an attempt to exclude or restrict coverage violated state law, it has voided the restriction or exclusion only up to the level of minimum coverage. It has permitted it to operate above this minimum. For example, in Jones v. Motorists Mut. Ins. Co., --- W.Va. ----, 356 S.E.2d 634 (1987), the West Virginia Supreme Court held that a named driver exclusion was only inoperative up to the limits of the required insurance. Id. at 636. In Dotts v. Taressa J.A., --- W.Va. ----, 390 S.E.2d 568 (1990), the Court held that a policy exclusion for intentional tort was precluded "up to the minimum insurance coverage required" but operated "as to any amount above the statutory minimum." Id. at 574. And in Burr, the Court noted that, although it found the exclusion of vehicles with dealer plates prohibited by the omnibus statute, it would have reached the same result under a Jones analysis that "a driver exclusion in an automobile policy is inoperative up to the limits of liability insurance required...." Burr, 359 S.E.2d at 633 n. 10. Therefore, Continental could refuse to insure customers "[a]bove the mandatory limits." Jones, 356 S.E.2d at 637.[7] Because McCombs had to insure a customer who used the car in West Virginia, after the car had been present in West Virginia for more than thirty days, and had to insure the customer at the minimum coverage required--$20,000--Bonar has $20,000 under the Continental policy. In addition, he has $25,000 under the Nationwide policy. We reverse the judge's finding that Continental was liable at the $500,000 level.
 
 
 18
 In addition, we reverse the judge's conclusion that Nationwide was the primary insurer. The Nationwide policy appears to contain an "excess" provision. We are uncertain whether the Continental policy should be interpreted as containing an "excess" or "escape" provision. We find it unnecessary to resolve the issue. Despite the fact that the Continental policy attempted to provide insurance coverage only where the insured customer did not have adequate coverage, the policy also stated, "For any covered auto you own this endorsement provides primary insurance." Policy at VII.B.1. McCombs owned the Firenza but permitted Bonar to drive it. Moreover, we believe that in this situation both Ohio and West Virginia would follow their general policies that the insurance should follow the car, rather than the driver. See State Farm, 383 S.E.2d at 796; Allstate Ins. v. State Auto Mut. Ins., --- W.Va. ----, 364 S.E.2d 30, 33 (1987) (stating that West Virginia has a "simple, bright-line rule of law that the primary obligation to defend and indemnify follows the automobile, rather than the driver"); Motorists Mutual Ins. Co. v. Lumbermens Mutual Ins. Co., 1 Ohio St.2d 105, 205 N.E.2d 67, 68 (1965) (stating that Ohio follows "[t]he rule of thumb that insurance on the car is primary--that on the driver is excess.... To use a shorter term-insurance follows the car."); see also State Farm Mut. Auto. Ins. v. Home Indemnity Ins. Co., 23 Ohio St.2d 45, 261 N.E.2d 128 (1970); Sutton v. Spencer, 56 Ohio App.3d 147, 565 N.E.2d 854 (Ohio Ct.App.1989); Ohio Farmers Ins. v. Ohio Casualty Ins. Co., 28 Ohio App.2d 170, 275 N.E.2d 877 (Ohio Ct.App.1971). Thus, the Continental policy provides primary coverage.
 
 
 19
 REVERSED.
 
 
 
 [1]
 The policy was actually issued in Ohio by Buckeye Union Insurance Company, an Ohio corporation with its principal place of business in that state. McCombs also had a $1,000,000 umbrella policy with Buckeye Union
 
 
 [2]
 Because Continental agreed to cover autos away from the state at the minimum levels required, we do not find it necessary to decide whether Ohio or West Virginia law applies through choice-of-law analysis
 
 
 [3]
 We do not interpret this provision as permitting Continental to have provided all its coverage for out-of-state accidents at the minimum levels required by that state. Rather, where Continental had failed to provide required out-of-state insurance, the policy would increase to the mandatory minimum
 
 
 [4]
 Section 17D-4-11 has since been repealed. We do not decide the coverage under the current laws
 
 
 [5]
 We note that the contract lending the Firenza to Bonar stated that it would expire on April 11, 1986. Nothing appears in the record to answer whether the contract was renewed either expressly or impliedly by McCombs and Bonar
 
 
 [6]
 The district judge stated, "As counsel for Continental conceded during a conference call held on May 17, 1990 ... there is no dispute that this car was operated within the State of West Virginia for at least thirty of the three hundred sixty-five days surrounding this accident."
 
 
 [7]
 West Virginia's policy of permitting exclusions to operate above the statutory minimum rebuts Nationwide's contention that the exclusion of permissive users was void under West Virginia law and that, therefore, the $500,000 policy limit applied. Automobile Underwriters v. Fireman's Fund Ins., 874 F.2d 188 (3d Cir.1989) and Fryer v. Allstate Ins. Co., 392 Pa.Super. 418, 573 A.2d 225 (Pa.Super.Ct.1990) are distinguishable. Both cases rely on Pennsylvania cases finding "escape" clauses disfavored because the interest of the insured should permit recovery under both applicable policies. Here, West Virginia has not demonstrated a repugnance for escape clauses as much as the state has demonstrated a commitment towards ensuring minimum coverage for all. To this end, West Virginia refuses to enforce certain clauses, such as that in the Continental policy, up to the statutory minimum, thereby permitting recovery, at least of the minimum amount, under both policies, while enforcing the provision above the minimum