356 S.E.2d 634

**Evelyn R. JONES**

v.

**MOTORISTS MUTUAL INSURANCE COMPANY**

No. 16068.

Supreme Court of Appeals of West Virginia.

April 28, 1987.

---

**764**

George E. Lantz, Lantz, Rudolph & Palmer, Parkersburg, for appellant.

Fred L. Davis, Jr., William L. Ballard, Davis, Bailey, Pfalzgrar, Hall & Clovis, Parkersburg, for appellee.

Robert P. Fitzsimmons, Wheeling, G. Charles Hughes, Moundsville, Arthur M. Recht, Recht & Johnson, Bachmann, Hess, Bachmann & Garden, Wheeling, for amicus curiae.

NEELY, Justice:

In May, 1982, the plaintiff, Evelyn R. Jones, bought an automobile liability insurance policy from the defendant, Motorists Mutual Insurance Company. Mrs. Jones had a teenage son named Dale whom she agreed to exclude from the automobile policy's coverage. Although the record before us is silent about why she excluded Dale, the briefs of counsel point out that insurance companies view teenage drivers as "high risk" insureds and charge lower rates when teenage household members are explicitly excluded from coverage. In this case the named driver exclusion provided as follows:

> It is agreed that such insurance as is afforded by the policy shall not apply with respect to any automobile or its use while such automobile is being operated by the following designated individual:
> DALE EDWARD JONES
> The named assured accepts this endorsement as witness his signature.
> ⟋¢S2¢SEvelyn R. Jones

On the same day that the policy was issued, Dale took his mother's car and wrecked it in a single car collision that damaged both the car and the property of third parties. Mrs. Jones sued Motorists for damages to her car and "... for the loss of use, annoyance and inconvenience arising out of Motorists' failure to timely reimburse her." Mrs. Jones also asked for "... any loss she sustained incident to the claims of other persons for damages arising out of the aforesaid collision ..." The circuit court granted the defendant's motion to dismiss, without prejudice, the complaint for money damages, but held that the named driver exclusion endorsement to the policy was invalid to the extent that the policy, as endorsed, failed to provide any

driver using the vehicle with permission of the named insured such liability insurance as is required by *W. Va. Code*, 17D–2A–1 [1982] *et seq.* The circuit court held that Motorists must either settle or defend suits against the plaintiff both for property damages and personal injuries to third parties up to the limit of the mandatory coverage required by *W. Va. Code*, 17D–2A–3 [1982] and *W. Va. Code*, 17D–4–2 [1979]. We agree and affirm.

# I

*W. Va. Code*, 17D–4–12(b)(2) provides that an automobile owner's liability insurance policy:

Shall insure the person named therein and *any other person, as insured, using any such vehicle or vehicles with the express or implied permission of such named insured,* against loss from the liability imposed by law for damages arising out of the ownership, operation, maintenance or use of such vehicle or vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such vehicle, as follows: Twenty thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, forty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident. [Emphasis supplied by the Court]

Furthermore, *W. Va. Code*, 17D–4–2 [1979] defines "proof of financial responsibility" as:

Proof of ability to respond in damages for liability, on account of accident occurring subsequent to the effective date of said proof, arising out of the ownership, operation, maintenance or use of a motor vehicle, trailer or semitrailer in the amount of twenty thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of forty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and

in the amount of ten thousand dollars because of injury to or destruction of property of others in any one accident. *W. Va. Code*, 17D–2A–4 [1984] requires that any insurance carrier certifying that an automobile is insured (as required by statute before a vehicle may be registered) must provide a policy with coverage not less than that required by *Code* 17D–4–2 [1979].

Furthermore, *W. Va. Code*, 17D–2A–1 [1981] is quite explicit when it says that "[t]he purpose of this article is to promote the public welfare by requiring every owner or registrant of a motor vehicle licensed in this State to maintain certain security during the registration period for such vehicle." *Code*, 17D–2A–3 [1982] then goes on to prohibit anyone from operating a motor vehicle on the roads and highways of this State without having in effect an insurance policy that meets the requirements of *W. Va. Code*, 17D–4–2 [1979] (unless the motorist fulfills substantially the same financial responsibility requirements in another fashion satisfactory to the commissioner of the department of motor vehicles).

All of this leads ineluctably to the conclusion that Motorists Mutual Insurance Company could not issue a valid automobile liability insurance policy to Mrs. Jones that excluded from its coverage, *for third-party liability purposes,* any driver using the vehicle with the insured's permission, except to the extent that the coverage limits exceeded the mandatory coverage set forth in *Code*, 17D–4–12 [1979]. Thus, Motorists Mutual must defend actions and/or pay claims both for third-party property damage and personal injuries arising from Dale Jones' operation of the motor vehicle up to the mandatory, statutory coverage limits. However, the named driver exclusion endorsement is effective against any claim made by Mrs. Jones herself for damage to her own automobile or other personal property owned by her or her son.

# II

Motorists Mutual points out that there is a conflict between the specific automobile liability provisions found in Chapter 17D of the *W. Va. Code*, and the "omnibus" statute governing automobile liability policies

found in *W.Va.Code*, 33–6–31(a) [1982]. The specific part of the omnibus statute to which Motorists refers says:

(a) No policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle, shall be issued or delivered in this State to the owner of such vehicle, or shall be issued or delivered by any insurer licensed in this State upon any motor vehicle for which a certificate of title has been issued by the department of motor vehicles of this State, unless it shall contain a provision insuring the named insured and any other person, except a bailee for hire *and any persons specifically excluded by any restrictive endorsement attached to the policy,* responsible for the use of or using the motor vehicle with the consent, expressed or implied, of the named insured or his spouse against liability for death or bodily injury sustained, or loss of damage occasioned within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle by the named insured or by such person: Provided, that in any such automobile liability insurance policy or contract, or endorsement thereto, if coverage resulting from the use of a nonowned automobile is conditioned upon the consent of the owner of such motor vehicle, the word "owner" shall be construed to include the custodian of such nonowned motor vehicles. [Emphasis supplied by the Court]

This omnibus statute authorizes potential users of an automobile to be specifically excluded from an automobile liability policy by a restrictive endorsement.

There does, indeed, appear to be a lack of harmony between this omnibus statute and the specific requirements of Chapter 17D of the *Code* concerning financial responsibility and minimum levels of insurance. Nonetheless, a common sense reading of these statutes in their entirety leads us to conclude that the legislature intended in Chapter 17 to provide a minimum level of financial security to third-parties who might suffer bodily injury or property damage from negligent drivers. But beyond the mandatory twenty thousand dollar bodily injury for one person, forty thousand dollar bodily injury for two or more persons, and ten thousand dollar property damage minimum coverage requirements, *Code* 33–6–31(a) [1982] allows an insurer and an insured to agree to a "named driver exclusion" endorsement. Furthermore, there is nothing in the policy declaration found in *Code* 17D–2A–1 [1981] indicating that it is the purpose of the legislature to protect a named insured's property from destruction by a teenage driver. In fact, *Code*, 17D–4–2 [1979] speaks in terms of "destruction of property of others" and is entirely silent concerning the destruction of the named insured's own property. This leads us to conclude that the issue of insurance for the named insured's own property is a matter to be left to agreement between the insured and her insurance carrier under *Code* 33–6–31(a) [1982].

For the foregoing reasons we hold that no "named driver exclusion" endorsement is of any force or effect in an automobile liability insurance policy in this State up to the limits of financial responsibility required by *Code* 17D–4–2 [1979]. Above those mandatory limits, however, and with regard to the property of the insured herself, a named driver exclusion endorsement is valid under the explicit language of *W.Va.Code*, 33–6–31(a) [1982].

Accordingly, the judgment of the Circuit Court of Wood County is affirmed.

Affirmed.