425 S.E.2d 257

**DAIRYLAND INSURANCE COMPANY, Plaintiff Below, Appellee,**

v.

**Judy A. EAST, aka Judith Ann East, Defendant Below, Appellant.**

No. 21171.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 16, 1992.

Decided Dec. 18, 1992.

Anita R. Casey, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for appellee.

David C. Smith, Princeton, for appellant.

WORKMAN, Justice:

This case arises upon the following two certified questions from the Circuit Court of Mercer County:

1. Whether the named insured exclusion endorsement in the Dairyland Insurance Company policy is valid and enforceable?

2. If the named insured exclusion endorsement is valid and enforceable, does the vehicle in which the named insured was riding as a passenger become an uninsured motor vehicle for purposes of recovering damages under the uninsured motorist coverage section of the policy?

In the declaratory judgment action initiated below by Dairyland Insurance Company ("Dairyland"), Appellee, the circuit court entered summary judgment against Appellant Judy East on the issue of coverage and then certified the above questions to this Court. We respond to the first certified question by determining that the named exclusion endorsement is invalid to the extent of the minimum coverage required by West Virginia Code § 17D–4–12(b)(2) (1991), but valid for any coverage exceeding the minimum statutory amount. We respond to the second certified question in the negative.

Mrs. East was injured in an automobile accident on April 26, 1988, in Mercer County, West Virginia. At the time of the accident, Mrs. East was a passenger in a vehicle that she owned which was being operated by her husband, Daniel East. Mr. East caused the accident by rear-ending an ambulance. Mrs. East initiated a civil action in the Circuit Court of Mercer County, alleging negligence against Mr. East in connection with the automobile accident.[1]

In effect at the time of the accident was a policy of insurance issued by Dairyland to Mrs. East which contained the following named insured exclusion endorsement:

NAMED INSURED EXCLUSION ENDORSEMENT [—] This endorsement modifies *your* policy in the following way: LIABILITY INSURANCE [—] The liability insurance provided by this policy doesn't apply to injuries to the person named on the declarations page. It[2] doesn't apply to the husband or wife of that person if they are living in the same household. (footnote supplied)

Based on its position that it owed no coverage to Mrs. East[3] because of the named insured exclusion endorsement, Dairyland then filed a separate civil action seeking a

---

1. The negligence suit has been stayed pending the resolution of the declaratory judgment action.

2. Dairyland asserts that the word "It" in the exclusion refers to the endorsement itself and not liability insurance coverage. Accordingly, Dairyland posits that the policy denies liability coverage only to the named insured, i.e. Mrs. East. We take no position regarding this matter as it is not relevant to the issues before this Court.

3. Dairyland did not deny coverage in general with respect to the accident caused by Mr. East. Dairyland paid sums to the ambulance driver injured by Mr. East as well as for the property damage caused to the ambulance.

declaratory judgment regarding its rights, duties, and obligations to Mrs. East. The circuit court resolved each of these certified questions against Mrs. East in an order entered on February 7, 1992.

Mrs. East urges this Court to find the named insured exclusion endorsement invalid and unenforceable on grounds that it violates the provisions of West Virginia Code § 33–6–29 (Supp.1992) as well as public policy. West Virginia Code § 33–6–29(a) provides in pertinent part: "An insurer shall not issue any policy of bodily injury or property damage liability insurance which excludes coverage to the owner or operator of a motor vehicle on account of bodily injury or property damage to any guest or invitee who is a passenger in such motor vehicle." Relying on West Virginia Code § 33–6–29, Mrs. East maintains that an insurer may not restrict availability of liability coverage to a guest passenger in a motor vehicle.

We note initially that the purpose and effect of the named insured exclusion endorsement in the Dairyland policy is to prevent Mrs. East from recovering for personal injuries to herself resulting from her own acts of negligence. Because of this endorsement then, had Mrs. East been driving the vehicle at the time of the accident, no coverage would have been extended to her under the subject policy. Appellant does not dispute this point, but instead argues that because she was occupying the passenger seat rather than the driver's seat when the accident occurred, her coverage should now be enhanced to cover her personal injuries. We further recognize, based on a representation made by Appellee during oral argument and not disputed by Appellant, that Mrs. East apparently paid a reduced premium because of the inclusion of the named insured exclusion endorsement in her policy. As a matter of policy, it seems unfair for the insured to receive coverage she did not contract for merely by switching seats in the automobile. Because we decide this case on grounds of law rather than policy, however, the outcome of this case is not determined by this observation.

■ This Court previously ruled in *Jones v. Motorists Mutual Insurance Co.*, 177 W.Va. 763, 356 S.E.2d 634 (1987) that:

A 'named driver exclusion' endorsement in a motor vehicle liability insurance policy in this State is of no force or effect up to the limits of financial responsibility required by *W.Va.Code*, 17D–4–2 [1979]; however, above those mandatory limits, or with regard to the property of the named insured himself, a 'named driver exclusion' endorsement is valid under *W.Va.Code*, 33–6–31(a) [1982].

*Id.* at 764, 356 S.E.2d at 635, Syllabus. Based on the following comment in *Jones*, Dairyland argues that the *Jones* holding is inapplicable:

[A] common sense reading of these statutes [West Virginia Code §§ 17D–4–12(b)(2) and 33–6–31(a) ] in their entirety leads us to conclude that the legislature intended Chapter 17 to provide a minimum level of financial security to third-parties who might suffer bodily injury or property damage from negligent drivers.

177 W.Va. at 766, 356 S.E.2d at 637. Dairyland focuses on the use of the term "third-parties" in the above-quoted sentence and suggests that the holding of *Jones* should not apply to the named insured in this case because she is not a third-party.

■ Although *Jones* clearly pertained to third-party liability, factually and legally, the reasoning of *Jones*, is applicable analogously to the case at bar. In *Jones*, this Court first recognized that the legislative intent in enacting West Virginia Code § 17D–4–12(b)(2) was "to provide a minimum level of financial security to third-parties who might suffer bodily injury or property damage from negligent drivers." 177 W.Va. at 766, 356 S.E.2d at 637. Secondly, we recognized that "beyond the mandatory twenty thousand dollar bodily injury for one person, forty thousand dollar bodily injury for two or more persons, and ten thousand dollar property damage minimum coverage requirements, *Code* 33–6–31(a) [1982] allows an insurer and an insured to agree to a 'named driver exclusion' endorsement." *Id.* While we were

not called upon to decide in *Jones* whether the statutory minimum amounts of coverage pertain to named insureds, we now conclude that the language in West Virginia Code § 17D-4-12(b)(2) was intended to provide a minimum level of financial security to named insureds as well as to third-parties. As support for this conclusion, we reference the statutory language that requires that an automobile owner's liability insurance policy "shall insure the person named therein ... against loss from the liability imposed by law for damages arising out of the ownership, operation, maintenance or use of such vehicle" subject to statutory limits. W.Va.Code § 17D-4-12(b)(2). For the same reasons that we concluded in *Jones* that a named driver exclusion was valid above the limits of financial responsibility imposed by West Virginia Code § 17D-4-2, a named insured exclusion endorsement is similarly valid above the statutorily-imposed minimum amounts of coverage.

A recent case decided by a federal district court in Kansas applying Missouri law addressed our specific issue, that is, whether a named insured exclusion clause violates public policy. The court in *State Farm Mutual Automobile Insurance Co. v. Gengelbach*, No. 91–2048–0, 1992 WL 88025 (D.Kan. March 3, 1992), extended the reasoning formerly relied upon to invalidate household exclusion clauses[4] to named insured exclusion clauses. *Id.* at 3. The court reasoned:

> The court further finds that the named insured exclusion clause contained in the Gengelbach's policy is invalid to the same

extent as the household exclusion clause [with respect to minimum coverage amounts required by the Missouri Motor Vehicle Financial Responsibility Law "MVFRL"]. Although *Halpin* does not address the validity of named insured exclusion clauses, this court believes that the policy reasons supporting the *Halpin* decision are equally applicable to named insured clauses. ... [T]his court believes that complete enforcement of the named insured exclusion clause in the instant case would thwart the purposes of the MVFRL by preventing Carolyn Gengelbach from recovering damages arising from the alleged negligence of her husband.... Stated differently, the court finds that enforcement of the named insured provision would prevent the policy at issue from insuring against loss from liability arising out of the use of the vehicle for a cause of action allowed by law.

*Id.* (citations omitted).[5]

■ Like the Appellant in this case, Mrs. Gengelbach was riding in the passenger seat of a vehicle operated by her husband at the time of a collision. Mrs. Gengelbach similarly filed suit claiming that she suffered injuries as a result of her husband's negligent operation of their vehicle. The only true distinction between the two cases is that both Mrs. Gengelbach and her husband were named insureds subject to a named insured exclusion endorsement as opposed to just the Appellant in the instant case. That distinction, however, is of no consequence to the outcome of the case or the reasoning applied by the court in reach-

---

**4.** A "household exclusion clause" typically excludes coverage to the named insured as well as any person related to the named insured who resides in the household of the named insured. Our reference to this concept in no way indicates that we would necessarily limit the coverage available to the statutory minimum if such a clause were at issue here.

**5.** The reasoning referenced in *Gengelbach* is that of the court in *Halpin v. American Family Mutual Insurance Co.,* 823 S.W.2d 479 (Mo. 1992):

> The plain purpose of the 1986 amendment [the enactment of the Missouri Motor Vehicle Financial Responsibility Law] is to make sure that people who are injured on the highways

may collect damage awards, within limits, against negligent motor vehicle operators. This protection extends to occupants of the insured vehicle as well as to operators and occupants of other vehicles and pedestrians. The purpose would be incompletely fulfilled if the household exclusion clause were fully enforced.... We believe that the legislature had a purpose of requiring motor vehicle liability policies to provide coverage coextensive with liability, subject to statutory limits. We should give effect to the pervasive purpose even though the method of expression may be inartistic.

*Id.* at 482.

ing its decision. Adopting the reasoning employed in *Gengelbach,* we determine that "enforcement of the named insured provision would prevent the policy at issue from insuring against loss from liability arising out of the use of the vehicle for a cause of action allowed by law." *Id.* Accordingly, we find that a named insured exclusion endorsement is invalid with respect to the minimum coverage amounts required by the West Virginia Motor Vehicle Safety Responsibility Law ("MVSRL"), West Virginia Code §§ 17D–1–1 to 17D–6–7 (1991 & Supp.1992). Above the minimum amounts of coverage required by West Virginia Code § 17D–4–12,[6] however, the endorsement remains valid. *See* W.Va.Code § 33–6–31(k).[7]

■ The next issue we examine is whether the named insured exclusion endorsement is invalid because of an alleged conflict with the guest passenger statute set forth in West Virginia Code § 33–6–29. Quoted in full above, the statute prevents insurers from issuing policies that deny coverage "on account of bodily injury or property damage to any guest or invitee who is a passenger" in a motor vehicle. *Id.* Mrs. East, without any support for her position, argues that she qualifies as a guest passenger by virtue of her location at the time of the accident in the passenger seat of her vehicle. Clearly, Mrs. East was a passenger in the vehicle. Under the language of West Virginia Code § 33–6–29, however, passenger status only is not suffi-

cient to invoke the benefits of the statute. She must also qualify as either a "guest" or an "invitee." [8]

■ Since the term "guest" is not defined under the MVSRL, we are required to afford that term its generally recognized meaning. *See* Syl. Pt. 1, *State v. Cole,* 160 W.Va. 804, 238 S.E.2d 849 (1977). Black's Law Dictionary states that:

A 'guest' in an automobile is one who takes ride in automobile driven by another person, merely for his own pleasure or on his own business, and without making any return or conferring any benefit on automobile driver. Guest is used to denote one whom owner or possessor of vehicle invites or permits to ride with him as gratuity, without any financial return except such slight benefits as are customarily extended as part of ordinary courtesies of road.

Black's Law Dictionary 707 (6th ed. 1990) (citing *Rothwell v. Transmeier,* 206 Kan. 199, 477 P.2d 960, 963, 966 (1970)).

■ Under the first definition of "guest" cited by Black's, Mrs. East fails because she clearly conferred a benefit on Mr. East, by permitting him the use of her vehicle. Application of the facts of this case to the second definition results in the same conclusion because Mrs. East as the owner of the vehicle could not extend and accept an invitation to herself regarding use of the vehicle. Additionally, even if you view Mr.

---

**6.** West Virginia Code § 17D–4–12(b)(2) provides that all motor vehicle liability policies issued by this state:

[s]hall insure the person named therein and any other person, as insured, ... against loss from the liability imposed by law for damages ... subject to limits exclusive of interest and costs, with respect to each such vehicle as follows: Twenty thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, forty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident.

**7.** West Virginia Code § 33–6–31(k) permits endorsements not inconsistent with the MVSRL: "Nothing contained herein shall prevent any insurer from also offering benefits and limits

other than those prescribed herein, nor shall this section be construed as preventing any insurer from incorporating in such terms, conditions and exclusions as may be consistent with the premium charged." *See also* Syl. Pt. 2, *Alexander v. State Auto. Mut. Ins. Co.,* 187 W.Va. 72, 415 S.E.2d 618 (1992) (recognizing that provided they " 'do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes[,]' " " '[i]nsurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged' ") (quoting Syl. pt. 3, *Deel v. Sweeney,* 181 W.Va. 460, 383 S.E.2d 92 (1989)).

**8.** We do not analyze this case in terms of whether Mrs. East qualified as an "invitee" as Appellant does not raise this issue as part of her appeal.

East as the possessor of the vehicle, a position which seems tenuous at best based on the parties' marital relationship, Mrs. East needed no invitation from her husband to ride in her own vehicle and accordingly, would not be her husband's guest. In any event, Mr. East still received a benefit from his wife by virtue of his use of his wife's car and thus, she necessarily fails to qualify as a guest under the second definition. In concluding that Mrs. East was not a guest passenger at the time of the accident,[9] we recognize that an owner of a vehicle does not become a "guest" within the purview of West Virginia Code § 33–6–29 merely by occupying the passenger seat of a vehicle.

## II.

■■■ Our final issue for consideration is whether the vehicle in issue became an uninsured vehicle for purposes of recovering damages under the uninsured motorist coverage section of the Dairyland policy. We dispense with this issue quickly as the Dairyland policy had in effect an exclusion that read as follows:

> Excluded Uninsured/Underinsured Motor Vehicles
>
> A *motor* vehicle owned by *you* or furnished for *your* regular use isn't an *uninsured* or *underinsured motor vehicle.*

Given the language of this exclusion combined with our determination that the exclusion is valid pursuant to West Virginia Code § 33–6–31(k),[10] we conclude that the vehicle in question does not qualify as an uninsured vehicle. *See also Thomas v. Nationwide Mut. Ins. Co.,* 188 W.Va. 640, 425 S.E.2d 595 (W.Va.1992) (upholding family use exclusion which excluded from the definition of "underinsured motor vehicle" any vehicle owned by or furnished for the regular use of the insured or a relative and recognizing that such exclusion has as its purpose the prevention of converting underinsured coverage into additional liability coverage). There are obviously no disputes regarding the existence of a valid insurance policy with respect to the vehicle in which the Easts were riding at the time of the accident. Consequently, just because an exclusion prevents an individual from recovering under the policy,[11] the vehicle does not then become an uninsured motor vehicle. *See American Standard Ins. Co. v. Dolphin,* 801 S.W.2d 413 (Mo.App.1990). Moreover, given that the effect of our holding in Section I of this case is to force Dairyland to provide coverage to Mrs. East up to the minimum statutory requirement, the vehicle cannot qualify as an "uninsured motor vehicle" by definition. *See* W.Va. Code § 33–6–31(c).[12]

---

**9.** While there are numerous cases and annotations addressing the issue of whether an owner can be a guest passenger in his own vehicle, we do not directly rely on those cases and annotations as support for our decision in this case because those cases involve "guest" statutes which require that a guest prove that the driver of the vehicle exceeded mere negligence to permit recovery by the guest. Although those cases arguably lend analogous support, because of the absence in West Virginia Code § 33–6–29 of any comparable requirement of negligence showing, we do not rely on such authority as the basis for this opinion. *See Coons v. Lawlor,* 804 F.2d 28 (3rd Cir.1986); Annotation, *Vehicle Owner or His Agent Having General Right of Possession and Control as Guest of Driver Within Automobile Guest Statute or Similar Rule,* 65 A.L.R.2d 312 (1959 and later case serv. 1984 & Supp. 1992).

**10.** *See supra,* note 7, for text of West Virginia Code § 33–6–31(k).

**11.** Because the Dairyland policy issued to Mrs. East was for only the minimal statutory liability coverage required by West Virginia Code § 17D–4–12 and because of our holding in Section I of this opinion that the named insured exclusion endorsement is invalid up to the minimum statutory limits, the exclusion does not prevent her recovery under the policy. In fact, she can theoretically recover up to the maximum amount of that for which she contracted.

**12.** An " '[U]ninsured motor vehicle' shall mean a motor vehicle as to which there is no (i) bodily injury liability insurance and property damage liability insurance both in the amounts specified by section two, article four, chapter seventeen-d, ... or (ii) there is such insurance, but the insurance company writing the same denies coverage thereunder, or (iii) there is no certificate of self-insurance...." W.Va.Code § 33–6–31(c).

Having answered the certified questions, this case is dismissed from the docket of this Court.

Case dismissed.