No. 22-0155, *Greg Allen Ball v. United Financial Casualty Company, Milton Hardware, LLC, Builders Discount, LLC, and Rodney Perry*

Walker, Justice, concurring:

FILED
**December 1, 2022**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

I concur with the reasoning of the majority opinion. I write to amplify the distinction between the question certified by the Fourth Circuit and that answered by my dissenting colleague.

"When the language of an insurance policy is contrary to statute and therefore void, the policy should be construed to contain the coverage required by West Virginia law."[1] So, I ask which *language* in the United Financial policy violates which *statute*? The Fourth Circuit answered that question when it held that a provision in the United Financial policy that would operate to exclude Mr. Perry—a permissive user—from liability coverage for Mr. Ball's injuries violates West Virginia Code § 33-6-31(a) (2015). "Any provision in an insurance policy which attempts to contravene W.Va.Code, 33–6–31(a), is of no effect,"[2] so the offending provision is now inoperable as to Mr. Perry.

Under West Virginia Code § 33-6-17 (1957),

> [a]ny insurance policy . . . issued and otherwise valid
> which contains any condition or provision not in compliance

---

[1] *Adkins v. Meador*, 201 W. Va. 148, 153, 494 S.E.2d 915, 920 (1997).

[2] Syl. Pt. 2, *Burr v. Nationwide Mut. Ins. Co.*, 178 W. Va. 398, 359 S.E.2d 626 (1987).

1

with the requirements of [Chapter 33 of the West Virginia Code], shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy . . . been in full compliance with this chapter.

Applied here, § 33-6-17 means that the lawful terms of the United Financial policy remain in effect, and the policy is to be applied according to those terms. Those terms make $1,000,000 of liability coverage available to Mr. Perry, an amount far greater than the minimums set by the Motor Vehicle Safety Responsibility Law, W. Va. Code §§ 17D-1-1 to 17D-6-7 (the MVSRL). The valid policy terms do not violate the MVSRL, so I see no need to construe the policy vis à vis that law rather than simply apply the policy's lawful terms.

The cases cited by the dissent do not dictate otherwise. As the majority explains, in *Jones v. Motorist Mutual Insurance Co.*, the named-driver exclusion didn't violate § 33-6-31(a); it violated § 17D-4-2(b).[3] That's why this Court held that the named-driver exclusion was inoperable only "up to the limits of financial responsibility required by" § 17D-4-2[4]—the exclusion wasn't voided by § 33-6-31(a) so it remained effective after

---

[3] *See Jones v. Motorists Mut. Ins. Co., overturned due to legislative action*, 177 W. Va. 763, 766, 356 S.E.2d 634, 637 (1987) ("But beyond the mandatory twenty thousand dollar bodily injury for one person, forty thousand dollar bodily injury for two or more persons, and ten thousand dollar property damage minimum coverage requirements, *Code* 33–6–31(a) [1982] allows an insurer and an insured to agree to a 'named driver exclusion' endorsement.")

[4] Syl. Pt. 3, in part, *id.*

the coverage mandated by the MVSRL was read into the policy. *Dotts v. Taressa J.A.*,[5] *Ward v. Baker*,[6] *Dairyland Ins. Co. v. East*[7] follow the same pattern: the exclusions passed muster under § 33-6-31(a) but not the MVSRL.[8] That is not the pattern the Fourth Circuit has asked us to address, here.

I am not swayed by the dissent's reference to West Virginia Code § 33-6-31(k) and Syllabus Point 3 of *Deel v. Sweeney*.[9] Syllabus Point 3 explicitly relates to first-party coverage; it states that "[i]nsurers may incorporate . . . exclusions in an

---

[5] *See* Syl. Pt. 4, *Dotts v. Taressa J.A.*,182 W. Va. 586, 390 S.E.2d 568 (1990) ("An intentional tort exclusion in a motor vehicle liability insurance policy is *precluded under our Motor Vehicle Safety Responsibility Law, W.Va.Code, 17D–2A–1*, et seq., up to the amount of the minimum insurance coverage required therein. The policy exclusion will operate as to any amount above the statutory minimum." (emphasis added)).

[6] *See* Syl. Pt. 3, *Ward v. Baker*, 188 W. Va. 569, 425 S.E.2d 245 (1992) ("Where a valid named driver exclusion *is present in an insured's insurance policy pursuant to West Virginia Code § 33–6–31(a) (1982)* and where a third party personal injury claim arises against the insured under a family purpose doctrine theory of liability from an automobile accident where the named excluded driver was operating the vehicle without the insured's consent, the insured's insurer need only provide the minimum mandatory liability coverage set forth in West Virginia Code § 17D–4–2 (1991)." (emphasis added)).

[7] *See* Syl. Pt. 2, *Dairyland Ins. Co. v. East*, 188 W. Va. 581, 425 S.E.2d 257 (1992) ("A named insured exclusion endorsement is invalid with respect to the minimum coverage amounts required by the West Virginia Motor Vehicle Safety Responsibility Law, West Virginia Code §§ 17D-1-1 to 17D-6-7 (1991 & Supp.1992). Above the minimum amounts of coverage required by West Virginia Code § 17D-4-12 (1992), however, the endorsement remains valid.").

[8] *Imgrund v. Yarborough*, 199 W. Va. 187, 193–94, 483 S.E.2d 533, 539–40 (1997), follows the same pattern—an exclusion that is valid and enforceable but cannot be used to deny the requisite, minimum amount of *uninsured* motorist coverage.

[9] Syl. Pt. 3, *Deel v. Sweeney*, 181 W. Va. 460, 383 S.E.2d 92 (1989).

3

automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the *uninsured and underinsured motorists statutes*."[10]   Further, in *Deel*, after detailing the history of § 33-6-31(k), this Court observed that "[t]he optional *underinsured* motorist coverage and paragraph (k) of Code, 33–6–31 appear to go hand-in-hand."[11]   So, I disagree with my dissenting colleague that § 33-6-31(k) connects § 33-6-31(a)—requiring coverage for the insured's and permissive user's liability to third parties—to the mandatory, minimum liability coverage required by the MVSRL, and so caps the liability coverage otherwise available to Mr. Perry.

At bottom, the Fourth Circuit's question is not as complicated as United Financial would make it.  As the majority correctly observes, § 33-6-31(a) plainly states that "all motor vehicle insurance policies [are required] to insure permissive users of insured vehicles 'against liability for death or bodily injury sustained . . . *within the coverage of the policy* . . . as a result of negligence in the operation or use of such vehicle by' the permissive user."[12]  Without the offending coverage exclusion, the remaining terms of the United Financial policy provide liability coverage to Mr. Perry up to $1,000,000— coverage that is not contrary to statute because it *exceeds* the minimum liability coverage

---

[10] *Id*.

[11] *Id*. at 463, 383 S.E.2d at 95 (emphasis added).

[12] *Ball v. United Fin. Cas. Co.*, No. 22-0155, slip op. at 8 (W. Va. Nov. 17, 2022) (quoting W. Va. Code § 33-6-31(a)).

required by the MVSRL. So, the reformed coverage terms are not subject to construction and must be applied as written, including the amount of liability coverage available to permissive users like Mr. Ball. For these reasons, I concur with the majority that application of those policy terms dictates that Mr. Perry is entitled to the full limits of coverage available to him as a permissive user.