**IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA**

Fall 2024 Term

**FILED**

**November 13, 2024**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 23-ICA-491

_____

NATIONWIDE INSURANCE COMPANY OF AMERICA,

Defendant Below, Petitioner

v.

BRITTNEY DUTY AND GREGORY DUTY, Individually and as Administrator
of the ESTATE OF BEVERLY DUTY,

Plaintiffs Below, Respondents, AND

LULA CONLEY, Individually and as Administratrix of the ESTATE OF
SHELVY CONLEY, AND PAUL CONLEY,

Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Logan County

Honorable Kelly Gilmore Codispoti, Judge

Civil Action No. CC-23-2021-C-30

REVERSED AND REMANDED

_____

Submitted: October 8, 2024

Filed: November 13, 2024

Denise D. Pentino, Esq.                    R. Chad Duffield, Esq.
Melanie Morgan Norris, Esq.                Farmer, Cline & Campbell, PLLC
Dinsmore & Shohl, LLP                      Charleston, West Virginia
Wheeling, West Virginia                    Counsel for Respondents Brittney Duty
Counsel for Petitioner                     and Gregory Duty, Individually and as
                                           Administrator of the Estate of Beverly Duty

William E. Robinson, Esq.
Dinsmore & Shohl, LLP
Charleston, West Virginia
Counsel for Petitioner

Mark E. Hobbs, Esq.
Chapmanville, West Virginia
Counsel for Respondents Lula
Conley, Individually and as
Administratrix of the Estate of Shelvy
Conley, and Paul Conley

JUDGE DANIEL W. GREEAR delivered the Opinion of the Court.

GREEAR, JUDGE:

Petitioner, Nationwide Insurance Company of America ("Nationwide"), appeals the October 2, 2023, order of the Circuit Court of Logan County awarding summary judgment to Respondents Brittney Duty and Gregory Duty, individually and as administrator of the Estate of Beverly Duty (collectively referred to as the "Dutys"), in a declaratory judgment action. Based upon our review of the record and applicable law, we find that the circuit court erred in awarding summary judgment to the Dutys, as the Nationwide automobile policy at issue contained a valid restrictive endorsement excluding coverage under the subject policy for any vehicles operated by Paul A. Conley ("Paul Conley"). Accordingly, we reverse the circuit court's October 2, 2023, order and remand this case to circuit court for further proceedings consistent with this opinion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

At all times relevant hereto, Paul A. Conley and his wife, Marie Conley, resided with Mr. Conley's parents, Shelvy and Lula Conley in Chapmanville, West Virginia. It is undisputed that for some time prior to the Spring of 2016, Shelvy and Lula Conley were insureds under an automobile insurance policy issued by Nationwide, identified as Policy No. 9247H 035583 ("old policy"). The *Your Policy Declarations* page of the old policy lists Shelvy Conley, Lula Conley, and Paul Conley as insured drivers. On April 18, 2016, Nationwide issued a written *Notice of Cancellation* to Shelvy Conley advising him that Nationwide would cancel the old policy on May 23, 2016, as a result of

1

the revocation of Paul Conley's driver's license, as well as invalid license information for Marie Conley.[1]

In an attempt to avoid cancellation of their policy, on May 9, 2016, Shelvy and Lula Conley both signed and dated forms titled "Authorization to Exclude a Driver (West Virginia)" to exclude both Paul Conley and Marie Conley (one authorization form for Paul Conley and one for Marie Conley) from coverage under the old policy when Paul or Marie Conley were "operating any of the vehicles to which the [old] policy applies." These forms were also signed, respectively, by Paul Conley and Marie Conley as the "[e]xcluded [d]river[s]." However, despite the execution of the forms, the Conleys' old policy was cancelled by Nationwide.

Following the cancellation of the old policy, Shelvy and Lula Conley applied to Nationwide for a new automobile insurance policy, expressly noting in their application that Paul Conley and Marie Conley would be excluded drivers under said policy.[2] Based upon those representations, on May 27, 2016, Nationwide issued a new policy of

_____

[1] Per Nationwide, the *Notice of Cancellation* was issued as required by "Nationwide's West Virginia Insurability Guidelines, which prohibit the issuance of insurance coverage for any driver in an insured's household with a revoked or suspended license." *See* Nationwide's appellate brief, at page 3.

[2] As noted by the Dutys in their appellate brief, while Nationwide asserts that in their application for coverage, Shelvy and Lula Conley specifically requested that coverage for Paul Conley and Marie Conley be excluded from the new policy, the application form included in the Joint Appendix (in which such request is memorialized) is not signed by Shelvy and/or Lula Conley or their agent.

automobile insurance to Shelvy and Lula Conley, Policy No. 9247K 900148, covering the period from May 25, 2016, through November 25, 2016 ("the initial new policy").[3] The initial new policy included a restrictive endorsement, titled "Endorsement 3239A – Voiding Automobile Insurance While a Certain Person is Operating Car (West Virginia)" ("the endorsement" or "excluded driver endorsement"), which provided:

> With this endorsement, the coverages provided in this policy are not in effect while:
>
> [Blank]
>
> is/are operating any motor vehicle to which the policy applies.
>
> The policy remains unchanged in all other respects.
>
> This endorsement applies as stated in the policy Declarations.

| Attached to and forming a part of policy number: | Effective at 12:01 a.m. on policy effective date |
|---|---|
| [Blank] | or on _____[Blank]___, whichever is later |

> Issued to:
>
> This endorsement is issued by the company shown in the Declarations as the issuing company.

Correspondingly, the *Your Policy Declarations* pages ("declarations pages") for the initial new policy expressly stated as follows:

---

[3] While the initial new policy has an effective date of May 25, 2016, the general policy information section of the declarations page indicates that the policy was issued on May 27, 2016.

**Excluded Driver(s)**

**The following driver(s) are excluded from all coverages and all vehicles on the policy:**

Marie Conley                    Paul A. Conley

Further, the *General Policy Information* section of the declarations page of the initial new policy noted that "[t]hese [d]eclarations are a part of the policy named above and identified by the policy number above. They supersede any [d]eclarations issued earlier. Your policy provides the coverages and limits shown in the schedule of coverages." Moreover, under the *Policy Form and Endorsements* section of the declarations page, the application of endorsement "V-3239A Voiding Automobile Insurance While a Certain Person is Operating Car (West Virginia)" to the initial new policy was expressly noted. Per the language of the endorsement, it became effective on May 25, 2016, the same effective date of the initial new policy.

On July 5, 2016, Nationwide issued another *Notice of Cancellation* to Shelvy and Lula Conley explaining that the initial new policy would be cancelled, effective August 9, 2016, because Nationwide had "not receive[d] valid driver exclusions [Authorization to Exclude a Driver (West Virginia)] for Marie [Conley] and Paul Conley." Following additional contact from Shelvy and Lula Conley, Nationwide agreed to reinstate the initial new policy only if Nationwide promptly received the executed valid driver exclusion authorizations for Marie Conley and Paul Conley. In response, Shelvy and Lula Conley

4

signed "Authorization to Exclude a Driver" forms for Paul Conley and Marie Conley and submitted them to Nationwide on July 25, 2016. The form, as to Paul Conley, expressly provided that:

> With my authorization, [Nationwide] has agreed to issue or continue coverage under the policy provided that coverage is excluded while Paul Conley is operating any of the vehicles to which the policy applies. I understand that this exclusion will apply to any subsequent transfer, reinstatement, or renewal of this policy. My signature below acknowledges my acceptance of the exclusion, and authorizes Nationwide Insurance to issue the appropriate endorsement to this policy. Policy No. 9247K 900148.

Nationwide accepted the signed authorization forms and reinstated the initial new policy effective August 8, 2016 ("reinstated new policy"). The reinstated new policy bore the same policy number as the initial new policy (Policy No. 9247K 900148) and contained the same endorsements (including endorsement 3239A for excluded drivers) and identical declarations page information and language (with the exception of the change of the issuance date of the policy). While the authorization to exclude a driver forms were properly executed by Shelvy and Lula Conley and the identification of Marie Conley and Paul Conley as "driver(s) [who] are excluded from all coverages and all vehicles on the policy" was expressly noted in the declarations pages of the Conleys' reinstated new policy, the endorsement itself did not identify Marie Conley and Paul Conley in the "blank" section of the form where such names of excluded drivers can be written, nor was the Conley policy number added to the endorsement in the provided blank. Rather, the endorsement noted that it applied "as stated in the policy [d]eclarations[.]"

5

The reinstated new policy was renewed and continued, with the same excluded driver endorsement and declarations page information and language, over a series of ten policy terms from November of 2016 through September of 2019.[4] The declarations pages for each of the renewals particularly listed Paul Conley and Marie Conley as excluded drivers and noted the applicability of endorsement V-3239A (Voiding Automobile Insurance While a Certain Person is Operating Car (West Virginia)).

On September 12, 2019, Paul Conley was operating a motor vehicle belonging to his parents, and traveling on County Route 701/25 in Chapmanville, when that vehicle crossed the center line of the roadway and struck, head-on, a vehicle operated by Brittney Duty, in which Beverly Duty was a passenger. As a result of the accident, a fire broke out entrapping those involved in the accident in their respective vehicles. Law enforcement officers were able to extricate Paul Conley and Brittney Duty from their vehicles, but were unable to extricate Beverly Duty, who ultimately died as a result of the injuries she sustained in the accident.

---

[4] The record reflects that the reinstated new policy was renewed ten times between May of 2016 through September of 2019. Those policy terms were as follows: May 25, 2016, through November 25, 2016; November 25, 2016, through May 25, 2017; May 25, 2017, through November 25, 2017; November 25, 2017, through May 25, 2018; May 25, 2018, through November 25, 2018; July 6, 2018, through November 25, 2018 (a new vehicle was added to the policy); September 12, 2018, through November 25, 2018 (a lienholder was added to the policy and the value of the new vehicle was reduced); November 25, 2018, through May 25, 2019; November 25, 2018, through May 25, 2019 (new driver, Angel Conley, was added to policy); May 25, 2019, through November 25, 2019 (new driver, Michael Conley, was added to policy).

6

It is undisputed that Paul Conley was at fault for the September 12, 2019, accident by driving while intoxicated ("DUI"),[5] failing to maintain control of his vehicle, failing to keep in proper lane, and operating his vehicle in an "erratic, reckless, or careless manner[.]" Following the accident, Mr. Conley was criminally charged and pled guilty to DUI causing death (a violation of West Virginia Code §17C-5-2(b) (2019)); and DUI causing injury to other than self (a violation of West Virginia Code § 17C-5-2(c) (2019)).[6]

Following the September 12, 2019, accident, the Dutys filed multiple claims with Nationwide, as the automobile insurer of Shelvy and Lula Conley. Nationwide denied the existence of coverage under the reinstated new policy for the Dutys' claims arising from the September 12, 2019, accident, as Paul Conley was an excluded driver under the reinstated new policy. It is Nationwide's position that Paul Conley has been an excluded driver under the reinstated new policy since that policy was issued in August of 2016, three years prior to the underlying accident. Conversely, the Dutys argue that the endorsement under which Nationwide claims that Paul Conley was an excluded driver was invalid as the endorsement was not "executed[.]" Specifically, the Dutys note that Paul Conley's name was not added to the blank space in the body of the endorsement form for the listing

---

[5] Mr. Conley's blood alcohol content (BAC) immediately following the subject accident was three times the legal limit of 0.08%. *See* West Virginia Code § 17C-5-2(e) (2019).

[6] Paul Conley was sentenced to an indeterminate period of three to fifteen years of incarceration for DUI causing death and two to ten years for DUI causing injury to other, with the sentences to run consecutively. Mr. Conley is presently serving his sentences.

7

of such name/names and, similarly, that the policy number and effective date of said policy were also left blank on the endorsement form.

On April 1, 2021, the Dutys initiated the underlying lawsuit against Paul Conley, Shelvy Conley,[7] Lula Conley, and Nationwide, seeking, in part, a declaratory judgment as to whether Paul Conley was an excluded driver under the reinstated new policy.[8] Such a question necessarily implicates the effect of the restrictive endorsement upon which Nationwide bases its denial of coverage.

The Dutys and Nationwide filed competing motions for summary judgment on the declaratory judgment/insurance coverage issue and a hearing was held on January 11, 2023. On October 2, 2023, the circuit court granted the Dutys' motion for summary judgment (and denied Nationwide's motion for summary judgment), concluding that the restrictive endorsement in the reinstated new policy was not properly executed, in that it failed to specifically identify (on its face) Paul Conley as an excluded driver, and therefore coverage existed under the reinstated new policy for the Dutys' underlying claims. On

---

[7] Shelvy Conley died on March 19, 2022, nearly a year after the Dutys' underlying claims were filed. By order entered November 21, 2023, the circuit court amended the style of the case to note Lula Conley's appointment as the Administratrix of the Estate of Shelvy Conley.

[8] In the underlying lawsuit, the Dutys also assert a claim against Shelvy and Lula Conley for negligent entrustment and claims against Paul Conley for his negligence and "negligent, reckless, malicious, and/or outrageous conduct" in causing the September 12, 2019, accident. Those claims remain active but were stayed by the circuit court pending this appeal.

October 16, 2023, the circuit court filed a Stipulation of Final Judgment as to Count V, in which the court noted that its October 2, 2023, order awarding summary judgment to the Dutys and against Nationwide was a "'final judgment' of the coverage [issue] within the meaning of [Rule 54 of the West Virginia Rules of Civil Procedure]" and, thus, said coverage issue was ripe for appeal. It is from the October 2, 2023, order that Nationwide now appeals.

## II.    STANDARD OF REVIEW

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Our review of this matter is further guided by the Supreme Court of Appeals of West Virginia's ("SCAWV") recognition, in syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995), that "[w]here the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Likewise, in syllabus point one of *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995), the SCAWV held "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." As to contractual agreements, such as insurance policies, the SCAWV has also determined that "[i]t is the province of the court, and not of the jury, to interpret a written contract." Syl. Pt. 1, *Stephens v. Bartlett*, 118 W. Va. 421, 191 S.E. 550 (1937). With these standards in mind, we now consider the issues raised on appeal.

9

### III. DISCUSSION

Nationwide raises four assignments of error on appeal. First, Nationwide argues that the circuit court erred in finding coverage under the Conleys' reinstated new policy for claims associated with a September 12, 2019, motor vehicle accident caused by Paul Conley. Second, Nationwide suggests that the circuit court erred in finding that the restrictive driver endorsement in the Nationwide policy issued to the Conleys was ambiguous in contravention of "undisputed extrinsic evidence demonstrating the plain intent of the parties." In its final two assignments of error, Nationwide contends that the circuit court erred in awarding the Dutys summary judgment and denying Nationwide summary judgment as to the Dutys' declaratory judgment claims. Regardless of how they were phrased by Nationwide, these four assignments of error all hinge on one singular determination made by the circuit court, the validity of the excluded driver restrictive endorsement made part of the Conleys' reinstated new policy with Nationwide and if that endorsement was sufficient to preclude coverage for the Dutys' underlying claims. Accordingly, we limit our review here to the propriety of the circuit court's decision in that regard and find that our ruling on that issue is dispositive of all of the assignments of error raised by Nationwide. *See generally Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (allowing consolidation of related assignments of error).

In its October 2, 2023, order, the circuit court determined that the excluded driver restrictive endorsement attached to the reinstated new policy issued to the Conleys

10

by Nationwide was invalid in that the endorsement (on its face) did not "specifically designate by name the individual or individuals to be excluded[,]" as required by the SCAWV's holding in *Burr v. Nationwide Mut. Ins. Co.*, 178 W. Va. 398, 359 S.E.2d 626 (1987). Accordingly, the circuit court reasoned that allowing Nationwide to "attach a blank restrictive endorsement form and simply list excluded drivers on a declarations page would be in conflict with the omnibus provisions" set forth in West Virginia Code § 33-6-31(a) (2015) and, thus, have no effect.[9] *See Burr*, 178 W. Va. at 399, 359 S.E.2d at 627, Syl. Pt. 2 ("Any provision in an insurance policy which attempts to contravene W. Va. Code, 33-6-31(a), is of no effect."). Conversely, Nationwide argues that the circuit court erred in concluding that Paul Conley was a covered driver, contrary to the plain and unambiguous language of the reinstated new policy and in finding that the endorsement was in contravention to West Virginia Code § 33-6-31(a).

We begin our analysis by reviewing West Virginia Code § 33-6-31(a), which provides, in pertinent part, that

> [n]o policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance[,] or use of any motor vehicle, may be issued or delivered in this state to the owner of such vehicle, or may be issued or delivered by any insurer licensed in this state upon any motor vehicle for which a certificate of title has been issued . . . unless it contains a provision insuring the named insured and any other person, except . . . ***any persons specifically excluded by any restrictive endorsement attached to the policy*** . . . against liability for

---

[9] *See* the October 2, 2023, order on appeal at Conclusions of Law, paragraph 23.

death or bodily injury sustained or loss or damage occasioned within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle by the named insured or by such person. . . . owner may by restrictive endorsement specifically exclude the person who violated the law and the restrictive endorsement shall be effective in regard to the total liability coverage provided under the policy[.] [emphasis added].

In *Burr*, the SCAWV reasoned that "[t]he purpose of an omnibus clause in an automobile liability insurance policy being to extend coverage, in proper circumstances, to any person using the insured vehicle, and to afford greater protection to the public generally, such clause should be given a liberal construction so as to afford coverage thereunder." 178 W. Va. at 404, 359 S.E.2d at 632 (citing Syl. Pt. 1, *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 154 W. Va. 448, 175 S.E.2d 478 (1970)). Further, the *Burr* court reasoned that the liberal construction of the requirements imposed by West Virginia Code § 33-6-31(a) was necessary as "the [L]egislature has demonstrated a clear intent to afford coverage to anyone using a vehicle with the owner's permission as a means of giving greater protection to those who are involved in automobile accidents." *Id*.

However, much time has passed since the *Burr* decision was issued in 1987, including revisions to West Virginia Code § 33-6-31(a) and adoption of a new code section, West Virginia Code § 33-6-31h (2015).[10] West Virginia Code § 33-6-31h(a) provides that

---

[10] In 2015 West Virginia Code § 33-6-31(a) was amended by substituting "may be issued" for "shall be issued" twice in the first sentence and "may be construed" for "shall be construed" in the second sentence.

12

"[f]or purposes of this section, the following definitions apply . . . (2) 'Excluded driver' means any driver specifically excluded from coverage under [West Virginia Code § 33-6-31]." West Virginia Code § 33-6-31h(b) goes on to state that "[t]he Legislature finds that . . . (1) The explicit, plain language of a motor vehicle liability policy between an insurer and its insured should control its effect[.]" Lastly, West Virginia Code § 33-6-31h(c) provides that

> [w]hen any person is specifically excluded from coverage under the provisions of a motor vehicle liability policy by any restrictive endorsement to the policy, the insurer is not required to provide any coverage, including both the duty to indemnify and the duty to defend, for damages arising out of the operation, maintenance[,] or use of any motor vehicle by the excluded driver.

The 2015 (post *Burr*) revisions to West Virginia Code § 33-6-31(a) and the adoption of West Virginia Code § 33-6-31h evidence an intent by the Legislature to honor the agreements made between insurers and their insured, even if said agreements limit the coverages available to injured parties. In providing its reasoning for the advent of the new statutory provision, the Legislature expressly acknowledged, in West Virginia Code § 33-6-31h(b)(2), that "[w]here insurers are required by the common law to provide minimum financial responsibility limits coverage for excluded drivers, consumers not excluded by restrictive endorsement are negatively impacted." This is a large step back from the reasoning adopted by the SCAWV in *Burr* and cases like *Jones v. Motorists Mut. Ins. Co.*,

13

177 W. Va. 763, 356 S.E.2d 634 (1987),[11] wherein the Court, prior to the passage of West Virginia Code § 33-6-31h, held that "a 'named driver exclusion' endorsement in a motor vehicle liability insurance policy . . . is of no force or effect up to the limits of financial responsibility required by West Virginia Code § 17D-4-2[.]"

As to construction of statutory provisions in West Virginia, it is the "cardinal rule of statutory interpretation . . . to first identify the legislative intent expressed in the promulgation at issue. To this end, [the SCAWV has] recognized that '[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.'" *In re Clifford K.*, 217 W. Va. 625, 633, 619 S.E.2d 138, 146 (2005) (quoting Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975)). As referenced in *In re Clifford K.*, the next step in statutory construction is to "scrutinize the specific language employed in the enactment." *Id*. Along that vein, the SCAWV has long held that

> "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syllabus point 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951)[; a]ccord *DeVane v. Kennedy*, 205 W. Va. 519, 529, 519 S.E.2d 622, 632 (1999)("Where the language of a statutory provision is plain, its terms should be applied as written and not construed." (citations omitted)).

---

[11] *Accord Ward v. Baker*, 188 W. Va. 569, 425 S.E.2d 245 (1992), and *Dairyland Ins. Co. v. East*, 188 W. Va. 581, 425 S.E.2d 257 (1992).

*Id.* at 633, 619 S.E.2d at 146. The Court has further noted that in interpreting statutory law, "[i]t is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syl. Pt. 11, *Brooke B. v. Ray C., II*, 230 W. Va. 355, 738 S.E.2d 21 (2013). Thus, here, we will analyze the propriety of the circuit court's decision below by the Legislature's directly noted intent that the "explicit, plain language of a motor vehicle liability policy between an insurer and its insured should control its effect[,]" despite the SCAWV's previous adherence to the liberal construction of the provisions of West Virginia Code § 33-6-31(a). *See* West Virginia Code § 33-6-31h(b).

As to the interpretation of insurance policies, it is the rule in West Virginia jurisprudence that "'[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 1, *Soliva v. Shand, Morahan & Co.*, 176 W. Va. 430, 345 S.E.2d 33 (1986) (overruled on other grounds by *National Mutual Insurance Co. v. McMahon & Sons*, 177 W. Va. 734, 356 S.E.2d 488 (1987)); *accord* Syl. Pt. 2, *Russell v. State Automobile Mutual Insurance Co.*, 188 W. Va. 81, 422 S.E.2d 803 (1992). In *American States Ins. Co., v. Surbaugh*, 231 W. Va. 288, 292, 745 S.E.2d 179, 183 (2013), the SCAWV, citing *Payne v. Weston*, 195 W.Va. 502, 466 S.E.2d 161 (1995), reasoned that "[i]n West Virginia, insurance policies are controlled by the rules of construction that are applicable to contracts generally . . . [A] court should read policy provisions to avoid ambiguities and not torture the language to create them."

15

The SCAWV has further held that "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl. Pt. 1, *Christopher v. United States Life Ins.*, 145 W. Va. 707, 116 S.E.2d 864 (1960). This principle is further endorsed by the Legislature through West Virginia Code § 33-6-30 (2002), which speaks to the construction of insurance policies and expressly requires, in subsection (a), that "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended or modified by any rider, endorsement or application attached to and made a part of the policy[.]"

Here, the only part of the reinstated new policy at issue was the excluded driver restrictive endorsement. Below, and before this Court, the Dutys and Conleys argue that *Burr* requires a finding that the underlying endorsement is invalid in that it does not specifically name an excluded driver on the face of the endorsement but refers to the declarations page of the policy. We disagree and find that, pursuant to the intent of the Legislature, as expressed in West Virginia Code § 33-6-31h, the unambiguous nature of the parties' contract, and case law regarding statutory and contract interpretation in West Virginia, the endorsement at issue is valid and precludes coverage to Paul Conley.

The endorsement here expressly notes on its face that it "applies as stated in the policy [d]eclarations." There is no dispute that the policy declarations for every one of

16

the Conleys' policies with Nationwide, referenced *supra* in n.4., clearly noted under the heading "[e]xcluded [d]river(s)" that "[t]he following driver(s) are excluded from all coverages and all vehicles on the policy:" whereafter the names of Marie Conley and Paul Conley are particularly noted. While the endorsement admittedly does not specifically name a person, we find that the endorsement is sufficient in that it identifies that it applies as stated in the policy declarations, which specifically name "persons" Marie Conley and Paul Conley.

Moreover, we find that the instant case is readily distinguishable from *Burr*, in that Marie Conley and Paul Conley, the individuals who are the excluded drivers the endorsement concerns, are identified specifically by reference to the declarations page.[12] In *Burr*, the offending endorsement referred to a class of people, those using "dealer plates[,]" and did not name any persons specifically – even through reference to the declarations page. Conversely, here, it was readily apparent to those who read the policy at issue, together with the restrictive endorsement, as required by West Virginia Code § 33-6-30, that Marie Conley and Paul Conley were excluded drivers under the Nationwide policy at issue.

---

[12] We note that in *Dairyland Ins. Co. v. East*, 188 W. Va. 581, 425 S.E.2d 257 (1992), the SCAWV, when addressing a certified question relating to a named insured exclusion in a Dairyland policy of motor vehicle insurance, found no error with or inapplicability of an endorsement when that endorsement did not name a particular person on the face of the endorsement, but simply referenced that the "liability insurance provided by this policy doesn't apply to those persons named on the declarations page." *Id*. at 584, 425 S.E.2d at 260.

What *Burr* requires is that "to be effective under W. Va. Code, 33-6-31(a), an exclusion must specifically designate by name the individual or individuals to be excluded." 178 W. Va. at 404-05, 359 S.E.2d at 633. We do not read *Burr* or West Virginia Code § 33-6-31(a) to require that this "specific designation" be done in a particular manner, only that the individual to be excluded be specifically noted, which Nationwide did in this case. We find that here, as the endorsement specifically refers to the declarations page, which clearly designates Marie Conley and Paul Conley as excluded drivers, the endorsement is sufficient. While it certainly would have been clearer for Nationwide to have included the names of Marie Conley and Paul Conley on the face of the endorsement itself, and we encourage them to do so in the future to avoid potential disputes, we find that the endorsement at issue is valid and precludes a finding of coverage under the reinstated new policy for Paul Conley. Accordingly, we reverse the circuit court's October 2, 2023, order and remand the case to circuit court for further proceedings consistent with this opinion.

## IV.    CONCLUSION

Wherefore, based on the foregoing, we reverse the October 2, 2023, order of the Circuit Court of Logan County, and remand this matter to the Circuit Court of Logan County for further proceedings consistent with this opinion.

Reversed and Remanded.

18